# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22CR 821-JLS |
| v. | INFORMATION |
| ELLIOT ADLER, | 18 U.S.C. § 371 – Conspiracy to Defraud the United States and File False Tax Returns |
| Defendant. | |

The United States Attorney charges, at all times material:

1. Beginning at least as early as 2010, and continuing through October 2018, within the Southern District of California and elsewhere, Defendant ELLIOT ADLER knowingly and intentionally conspired and agreed with Yisroel Goldstein (charged elsewhere) and others to: (1) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes; and (2) file false tax returns in violation of 26 U.S.C. § 7206(1).

2. To further the conspiracy, ADLER and his co-conspirators used the following manner and means, among others:

   a. ADLER would give money to Goldstein, disguised as charitable or religious donations to the Chabad. In return, Goldstein would generate

a receipt on Chabad letterhead falsely acknowledging ADLER's "generous tax deductible donation."

 b. Rather than using the purported donations for charitable purposes, Goldstein would secretly funnel approximately 90% of the funds back to ADLER, keeping approximately 10% of the money as his fee. Thus, 100% of the purported donation was diverted and none of the funds were actually given to the Chabad as a charitable donation.

 c. In order to conceal and hide their conduct, ADLER and Goldstein would communicate using coded language. For example, Goldstein would refer to cash as "challah" and his source of cash as "the baker," or Goldstein would invite co-conspirators to "wrap tefillin" when he proposed meeting to receive checks or deliver cash.

 d. ADLER would then falsely claim to his tax preparer that 100% of his payments to the Chabad were tax-deductible charitable contributions, without disclosing that Goldstein had secretly returned most of the money to him. ADLER's tax preparer would then include the fraudulent donations to the Chabad in ADLER's itemized deductions, thereby reducing ADLER's personal income tax liabilities.

 e. Defendant ADLER would then sign and cause a false tax return to be filed with the IRS in which he falsely claimed that he had made the fraudulent charitable donations. In doing so, ADLER fraudulently reduced his tax liability by more than $500,00 for tax years 2011 through 2017.

3. In furtherance of the conspiracy, ADLER, Goldstein, and others took numerous overt acts, including the following:

 a. On around October 19, 2015, Goldstein sent a text message to ADLER alerting him that he had cash available: "I just got a call from the Baker he may be in this Friday do you still need Chalah?"

b. On around December 4, 2015, Goldstein sent a text message to ADLER which stated: "Eliot how are you the Baker needs to know if you need any Chala before the year end[.]"

c. On or about Thursday, January 7, 2016, at approximately 7:55 am, Goldstein texted ADLER again: "Good morning I got the challah[.] What time?"

d. That same day, January 7, 2016, at approximately 8:00 am, ADLER replied to Goldstein by text: "Monday morning 8am at shul or today before 12pm if you can come to my office." Goldstein responded: "Monday @ 8 is fine[.]" Adler confirmed: "See you then."

e. On about Monday, January 11, 2016, Goldstein deposited a check for $30,000 from ADLER, payable to Chabad of Poway, which was dated December 17, 2015 and included the memo: "Charitable Donation."

f. On about December 23, 2016, Goldstein deposited a check for $44,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation."

g. On about December 25, 2017, ADLER texted Goldstein asking to meet with him.

h. On about December 29, 2017, Goldstein deposited two sequentially-numbered checks from ADLER, one for $180,000 dated December 25, 2017, and one for $980,000 dated December 29, 2017, each payable to the Chabad of Poway and each with the memo: "Donation." Goldstein provided ADLER with a donation receipt letter for each of these checks, memorializing ADLER's "generous tax-deductible donation."

i. On about Friday January 5, 2018, Goldstein sent ADLER a coded text message: "Let me know if you're around sometime this week that we can get together and wrap teffilin?" ADLER proposed: "How about Monday?" Goldstein agreed.

j. On around January 10, 2018, Goldstein wired approximately $1,000,000 to a wholesale and retail jeweler to purchase 246 Suisse Fortuna 1 oz. rectangular gold ingots, 246 Canadian Maple Leaf 1 oz. gold coins, and 246 American Eagle 1 oz. gold coins.

k. On about January 16, 2018, Goldstein received the gold coins and placed them in his safe deposit box at Wells Fargo Bank for safekeeping.

l. On about January 17, 2018, Goldstein texted ADLER a coded message: "When can you come [i]n for a teffilin wrap?  I'm ready for you."

m. On around January 18, 2018, Goldstein delivered the gold to ADLER.

n. On about February 1, 2018, Goldstein deposited another check for $18,000 from ADLER, payable to Chabad of Poway, which was dated December 30, 2017.

o. In or around September 2018, ADLER provided his tax preparer with a summary of his "Charitable Contributions" in 2017 in which he claimed that he donated to Chabad of Poway: (i) $180,000 on December 25, 2017; (ii) $980,000 on December 29, 2017; and (iii) $18,000 on December 30, 2017.  ADLER included these purported donations among the itemized deductions included on his tax return to reduce his taxable income for 2017.  ADLER did not reveal to his tax preparer that he had secretly received approximately $1 million in gold from Goldstein after making his purported donations.

p. On about October 3, 2018, ADLER signed an IRS e-file signature authorization form, declaring that he had examined his tax return and that it was accurate, and permitting his tax return preparer to file it electronically.  On about October 8, 2018, ADLER's electronic Individual Income Tax Return Form 1040 for the 2017 tax year was e-filed.  In this return, Defendant ADLER falsely claimed that he had

4

donated approximately $1,187,000 to charity, and in doing so, fraudulently reduced his 2017 tax liability by approximately $447,000.

q. On about October 18, 2018, Goldstein told ADLER that he was under investigation by the IRS and had been the subject of an undercover operation relating to tax evasion. He asked for ADLER's help to prove, falsely, to the IRS that Goldstein—and not ADLER—was in possession of the gold coins purchased with ADLER's purported donation.

r. At around just after midnight, in the early hours of October 19, 2018, ADLER arrived at Goldstein's home and returned the gold coins.

All in violation of Title 18, United States Code, Section 371.

RANDY S. GROSSMAN
Acting United States Attorney

DATED: 4/6/2022

VALERIE H. CHU
Assistant U.S. Attorney

DATED: 4/6/22

MICHELLE WASSERMAN
Assistant U.S. Attorney