# EXHIBIT A1

# ELLEN N. ADLER

San Diego, CA 92130 |              |              @gmail.com

July 1, 2022

Honorable Cynthia A. Bashant
United States District Judge
Southern District of California
Edward J. Schwartz U.S. Courthouse
221 West Broadway
San Diego, CA 92101

Your Honor,

As the wife of Elliot Adler, a man whom I dearly love and a man who has been a loyal husband to me, I am truly shocked and saddened that I find myself in the position of writing a letter to you on his behalf.  We have three wonderful children, B      (age 13), A       (age 11), and D          (age 3), all who adore and worship their father.  Quite frankly I never believed that Elliot would have become involved in something like this.  I have known him for 16 years, and his actions are completely out of character.  Elliot is the person our family and friends consider to be the most reliable, ethical, and caring person we know.  Elliot and I have had many late night discussions about what he did and he has repeatedly told me, with tears in his eyes, how sorry he is for ever having gotten involved.

Elliot and I were first married in 2008.  In fact, we were married by Rabbi Yisroel Goldstein, who first got my husband involved in this charitable donation fraud. To give you some background, Rabbi Goldstein has been present throughout the years for a number of our family milestones. Our family used to go to religious services performed by Rabbi Goldstein, and he officiated over my son's circumcision ceremony. He also did the baby naming for my daughter A      , and we have been to his house for Sabbath dinner. Elliot was especially close with Rabbi Goldstein and viewed him as a mentor, spiritual guide, and confidant.

In the 14 years that I have been married to Elliot, not only has he been a wonderful, supportive husband but an amazing father to our children, the kind of father we all dream about when thinking of having children. He is very involved in their daily lives. He was my son's little league coach and tutored him for his bar mitzvah. He takes the children to school and numerous other events and activities, including fishing, sporting events (baseball, basketball and hockey), and tons of extra-curricular activities, such as dance for our daughter and basketball for our son. He helps on a daily basis with breakfast, homework, bathing and bedtime routines, as well as shared domestic chores. More than this, the children come to Elliot with their problems, school and otherwise, and he provides them with indispensable and ample emotional support. In most families, children tend to be closer to their mothers and confide their experiences and anxieties with the mother. In our household, the children confide in Elliot, and I must confess that I am sometimes jealous of the incredibly strong bond he has with each of the children.

I am sharing these thoughts with you because of my fears and nightmares about what will happen to our children if Elliot is incarcerated for any lengthy period of time. I am sure that this is a concern you have encountered in every case in which a father of children is sentenced.

While I am keenly aware that all families are saddened by having a parent incarcerated, I hope you will consider that my children will be more deeply affected by loss of their father because of my medical condition and diminished ability to care for them. In terms of their social emotional development, I know my children will miss Elliot terribly, and will struggle without his presence and emotional support, especially as Elliot is the rock of our family during times of difficulty, including the current time period.

As though this were not enough to endure, my family has also been traumatized by the war in Ukraine, from where my family emigrated. My brother (Alex) still lives in Ukraine and was drafted months ago for active service in the Ukrainian military. He is currently stationed in Dombas, Ukraine, which is right in the heart and front lines of the fighting. His children have fled Ukraine. I wait patiently as he communicates to let me know he's safe. But these communications are often days apart leaving me to worry in

2

tremendous agony as horrific reports come over the news stations.  Elliot has spent countless hours with me, consoling me about the situation.  We pray daily for his safety, but this situation has only added to my daily stress and anxiety.

I thank you for taking the time to consider my input in making your decision.  I know Elliot committed a crime and that there are consequences.  To the extent that you could see fit to having him serve his debt while also mitigating the impact to our family, I would be very grateful.  I thank you in advance for your consideration in making this decision.

Sincerely,

Ellen Adler

3

# EXHIBIT D1

Dear Judge Bashant,

       My name is _____. I am Elliot Adler's son. I am 13 years old and I'm going into 8th grade.  I have 2 little sisters. I am writing to ask you to consider a few things about my mom and dads situation. My dad does most of the stuff in our everyday lives because of the situation my mom is in.

       I am also very worried about how my school is going to be affected if my dad is away. My dad does everything to help us get ready for school, including for D. who goes to preschool where I go to school. He is the main person who speaks to my teachers and makes sure everything is going well in school. He does my homework with me every night and helps me study for tests. I am nervous that my grades will go down without my dad. He is also the one who takes me to all of my activities, like basketball which sometimes is 3 times a week, and thats not including weekends. He also takes me to my doctors appointments and school activities and was my little league coach.

       I also want to tell you that my dad knows what he did was a bad thing, and I know actions have consequences. But I know that my father has learned a lesson and will never break the law again.

       Sincerely,

# EXHIBIT E1

Dear Judge Bashant,

My name is _____. I am 11 years old. I am writing to you about my dad, Elliot Adler.

My dad takes us to school every morning. He gets my little sister, D. ready. That means changing her, making breakfast and getting us ready. My dad also does all the cooking. He is the one who goes to the supermarket if we need food during the week. He takes me to my doctor and orthodontist appointment, and dance 3 times a week. He pretty takes me to everything.

My dad is also the one who almost always takes care of my little sister, D. He makes sure she has her bath and eats. He is the one who calms her down when she is crying. My dad gets us all ready for school in the morning and takes us to school. So my dad is the one who puts us to bed at night, especially my little sister. He reads her stories at night to help her fall asleep. My dad is also the one who talks to all my teachers if I'm having trouble in school. That's why I have been a strait A student. But I worry about school if my dad isn't there to help.

My dad explained to me that he broke the rules and that bad things happen when you break the rules. He also told me he wants to make sure that I do not break the rules. I know what my dad did was wrong, but I wish he could stay with us at home.


Sincerely,

# EXHIBIT F

August 5, 2022                                                                      Elliot Adler

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Honorable Judge Bashant,

I write this letter to express my remorse for my misconduct and to apologize to the
people that I have harmed.  The offense in which I chose to engage should not be
tolerated by our society, and I recognize that I must be punished for it.

The experience of a criminal prosecution has forced me to look closely at who I am
as a person.  I have read the numerous letters that people have written about me.  I
am extremely humbled by these kind statements, and grateful that my efforts to
help others have not gone unnoticed.

But there is another side of me I've had to come to terms with.  I would very much
like to believe that because I've done some good in this world, my offense was just a
momentary lapse in judgment.  However, I've struggled to understand why I chose
to go down this wrong path.  I was successful professionally and did not need to
cheat on my taxes.  Although I truly believed that the 10% was indeed going to a
rightful charity for worthy causes, I could have simply made a legitimate donation.
While I must confront that greed, it is only part of the overall picture of what lured
me down this path.

When my misconduct began, I was in a very different position.  I grew up in Chula
Vista, California.  My father was a real estate developer.  While he was a great role
model, we experienced a mixture of both up and down times (as a family of six)
during sometimes turbulent real estate markets.  Things were good at times.  But
when the real estate market went on a decline, there were a lot of rainy days.  Our
home was foreclosed upon, and we struggled moving from place to place.  My father
and mother would come under terrifying pressure.  I learned at an early age that
financial circumstances could change on a dime.

Nowhere did this come to fruition more than in my own legal practice.  I began as a
solo practitioner around the time of the Great Recession of 2008.  In my first year, I
had a small number of clients which included family law, personal injury, and
immigration cases.

Around this time, a massive wildfire occurred in North County which destroyed over 1,650 homes and resulted in complex civil litigation. I knew people in the area impacted by the wildfires and I began to represent them. In representing so many people, all who had recently gone through such a life changing event, I became impassioned about this area of practice. Indeed, the reason I went to law school was in order to help people. I soon learned how expensive this type of litigation could be, requiring hiring several attorneys, support staff, and experts. I also learned that in representing clients who had recently lost everything, working on contingency was my only option. I came to understand that it would take years for cases to resolve.

On one matter, after depleting my entire life savings, I took out a bank loan, risking money that I did not have and with no guarantee to recover it. I put my home on the line and proceeded to represent my clients with every ounce of work ethic I could find within me. Many nights I would sleep in my car while on the road. The motivation to prove the facts as I knew them to be true, and my belief that I could do so, was all I needed to face the odds. The inspiration to give back my clients their lives and dignity after a life changing event meant there was no turning back. The litigation took years, but ultimately was successful. Fortunately, I was able to pay back the bank loan. Although I earned significant income, I never lost the memory of how far the financial pendulum can swing.

This is not an excuse to defraud the government. That was wrong. I knew better, and words don't even begin to convey the depth of how sorry I am. My actions have caused more pain and suffering than I ever imagined anything could. I've lost my law license, destroyed my career in its prime, lost my personal and professional reputation, and thrown away seven years of education, all of which is humiliating and extremely depressing. I will be forever branded with the shame and humiliation of being a convicted felon.

Worse than all that, I have caused my wife and three children immeasurable pain. Rather than protect them from harm, I became the most significant source of it. It was the most gut-wrenching moment of my life, telling my kids their dad will need to leave them because he broke the law. No young child should have to think about what life will be like without a parent. It pains me immensely to know that I did this to my children and cannot protect them from their grief and loss.

But no matter how much the collateral damage may be, I will not allow it to deflect from the fact it was me that chose this course. And because I have carved this path that has led to so much pain and suffering, I have come to the realization that only a similar path to doing good in this world is the way to correctly make amends for it. I have started in my home by caring for my wife and children. They are everything to me. I have also been volunteering at Mama's Kitchen, and

disseminated hundreds of meals to cancer patients, unhoused people, and others in need.

I also want to ensure that other lawyers do not choose to take the wrong path. Accordingly, I worked with Professor Tim Casey, an ethics professor at California Western School of Law.  Professor Casey's scholarship includes exploring why lawyers make bad decisions and what can lead to indifference of the rules. Additionally, I plan to meet with law students to help influence others not to head down the wrong path, regardless of the apparent need or temptation to do so, and to realize the consequences of such mistakes.

Thank you for considering my personal statement.


Respectfully,

Elliot Adler

# EXHIBIT G

# CALIFORNIA WESTERN
## SCHOOL OF LAW | San Diego

*Our mission is to train ethical, competent and compassionate lawyers,*
*representative of our diverse society, who can use the law effectively and creatively.*

August 9, 2022

Honorable Cynthia A. Bashant
United States District Court
Southern District of California
221 West Broadway
San Diego, CA 92101

Re:     United States v. Adler
        22-CR-0821

Dear Judge Bashant:

I write on behalf of Elliot Adler, who is scheduled for sentencing after his plea of guilty. I believe that Mr. Adler has demonstrated remorse for his criminal behavior and he has communicated to me his desire to help others, especially new lawyers, to learn from his experience.

As background, I currently hold an appointment at California Western School of Law as Professor in Residence and Director of the STEPPS Program (a second-year required course in legal ethics, lawyering skills, and professionalism). I also serve as a Visiting Professor of Law at the University of San Diego School of Law, where I teach Professional Responsibility. In addition, I am currently the Co-Chair of the Legal Ethics Committee of the San Diego County Bar Association.

Because of my background in legal ethics, a case like Mr. Adler's is of particular interest to me. I am eager to understand why lawyers break the rules, how ethical lapses occur, what circumstances lead to seemingly illogical decision-making by otherwise logical people, and – most importantly – whether it's possible to stop these lapses before they occur.

I met with Mr. Adler on two occasions and our conversations were both interesting and productive. I write to share with the Court my impressions of Mr. Adler, which the Court may, in its discretion, take into account in determining an appropriate sentence.

Incrementalism and Error Blindness

How does a person who appears to "have it all" decide to risk everything? My hypothesis regarding ethical violations is that no lawyer wakes up and decides to break the rules or violate the law. Rather, ethical violations build incrementally. A small transgression, made under pressure, or motivated by good intention, goes unnoticed. For example, a lawyer might realize he missed a

filing deadline by a single day and decides to back-date a motion to protect a client's interests. The lawyer knows the action was wrong, but perhaps psychologically, the lawyer is able to compartmentalize the violation, and ignore the guilt. When another dilemma appears, it may be easier to justify the transgression. Violations grow in frequency and scale and the compartmentalization continues. The compartmentalization allows the lawyer to continue to function, but also creates a blind spot. With the initial violations, the lawyer knows he is breaking the rules, but others do not. But soon enough, this situation is inverted. The violations become clear to others, but the lawyer does not see what others see. This phenomenon may create an appearance that the lawyer is arrogant or believes rules don't apply to him. At some point, the lawyer gets caught. As if a blindfold was torn away, the lawyer "suddenly" realizes the obvious: he risked his livelihood, his reputation, and perhaps his liberty, and for what? In the aftermath, the compartmentalization disappears (in most cases). The lawyer realizes his mistakes and suffers from real and profound regret, often asking himself, what was I thinking?

<u>What was Mr. Adler thinking?</u>

Based on my conversations with Mr. Adler, it appears that in many respects, Mr. Adler's actions and experiences fit within the model I described. It does not appear to me he woke up one day and decided to break the law. I did not hear of any back-dating of documents or other ethical violations. His violations were related to interactions with his rabbi, a person he trusted and whose approval he desired. His criminal actions started with a small transaction, a gift, a favor to a trusted religious figure to whom he felt indebted. And the violations grew in frequency and scale. Mr. Adler appears to have suffered from the compartmentalization and error blindness described above. While he functioned as a reputable and honest attorney in other aspects of his practice, his illicit interactions with the rabbi continued. And when, eventually and inevitably, the blindfold was ripped away, it seems Mr. Adler was truly asking himself the question: what was I thinking?

<u>Moving Forward</u>

I believe Mr. Adler's experience could be a valuable learning tool for both new and experienced lawyers alike. Many law students and new lawyers aspire to the position Mr. Adler once held: the principal of a successful law practice, a position of financial security, and a solid professional reputation. How could someone who appeared to "have it all" put everything at risk? The story of Mr. Adler's fall, told in his own words, could be a powerful learning tool for others.

Mr. Adler has expressed his desire, which I believe to be genuine, to help others avoid the mistakes he made. He appears remorseful. In candor to this Court, at this point I do not know how to make the best use of Mr. Adler's experience. He could assist in the preparation of a case study or he speak to a group of law students about his transgressions. I am a firm believer that a real case makes a better learning tool and when students can put a face to a situation, the lessons become more ingrained that they would be through reading a textbook. Mr. Adler's story must be his own and reflect the truth of what occurred. Telling his story will require concentrated reflection on his part and in the end, his story may support my hypothesis or may provide evidence for a new way of thinking about how and why lapses occur.

I believe Mr. Adler has something to offer in pursuit of improving our profession. His story could help others increase awareness about how ethical and criminal violations occur and highlight the penalties that accrue at the end of the road. A narrative where one recognizes his transgressions and seeks to prevent the same from recurring in the future has strong support in our experience and in our legal precedent.

In sum, Mr. Adler has acknowledged his wrongful behavior and his desire to help others avoid his mistakes. I respectfully submit my observations to this Court for consideration in the sentencing of Mr. Adler.

Respectfully,

Timothy Casey

225 Cedar Street
San Diego, CA 92101
cwsl.edu

# EXHIBIT H

August 9, 2022

Honorable Cynthia A. Bashant
Southern District of California
Edward J. Schwartz Building
221 West Broadway, #4145
San Diego, CA 92101

Re:     Elliot Adler

Dear Judge Bashant,

I am the Director of Volunteer Engagement at Mama's Kitchen. Our organization strives to provide nutritional support to San Diego residents at risk of malnutrition due to critical illnesses such as HIV, cancer, congestive heart failure, type 2 diabetes, and chronic kidney disease. Together with volunteers, Mama's Kitchen attempts to help our people in our community stay healthy, preserve their dignity, and keep their families together by providing, medically tailored home-delivered meals, along with pantry services and nutrition education – all at no cost.

I write this letter in support of Elliot Adler. Over the last month, Elliot has been a frequent and consistent volunteer at Mama Kitchen. He has a true desire to make an impact, and a genuine interest in filling the needs at Mama's Kitchen. For example, while we service all areas of San Diego, some areas are easier to find volunteers to work in than others. Recently, Elliot approached me and offered to volunteer in areas for which we tend to have a harder time finding people to assist. In my experience this does not happen often. I do not believe there is any limitation on what Elliot would do to help us.

Over the last three weeks, Elliot has volunteered for four shifts, and worked at least 11 hours. This has helped so many people and provided hundreds of meals them. He has also waived any milage and other out of pocket reimbursements programs. We'd like to have more people like Elliot volunteer for us.

While Elliot's recent troubles have played a motivating role in his recent volunteer service, he has approached his volunteer work here with enthusiasm. His desire to help people is genuine and clear to everyone around him. We are very happy to have him with us.

Sincerely,

Philip Chao
Mama's Kitchen
Director of Volunteer Engagement





# EXHIBIT I

*Hon. Peter D. Lichtman*
*Judge of the Los Angeles Superior Court (Ret.)*
*2954 Gainsborough Dr.*
*San Marino, California 91108*

May 14, 2022

Honorable Cynthia A. Bashant
Judge of the United States District Court / Southern District of California
United States Courthouse
221 West Broadway
San Diego, CA 92101

Re: Elliot Adler

Dear Judge Bashant:

The purpose of this letter is to assist you in the sentencing of Mr. Elliot Adler. Permit me to introduce myself and provide some background and context to the statements that I will be submitting on his behalf.

I served as a Superior Court Judge for almost 20 years and was honored to have been chosen to establish two different court programs for the Superior Court in Los Angeles County. I was one of the founding judges for the Los Angeles Superior Court Complex Civil Litigation Program and was likewise chosen to re-establish the Mandatory Settlement Conference Program for the Civil Trial Courts.

I was twice chosen as the Supervising Judge for the Complex Litigation Program which was designed to handle mass tort cases of every nature as well as complex class actions. I retired from the bench in December 2011 and have since taken up the role of a professional mediator. At present I likewise serve as the Special Master for both the Thomas and Woolsey Fire Cases presently being administered under a JCCP designation out of my former Complex Litigation Court.

I have been managing and settling California Wildfire cases for well over 25 years. It is in this context that I first became acquainted with Mr. Adler and have dealt with him in a professional setting, specifically in my role as a mediator. I have worked with Mr. Adler on a regular basis for many years and there is no doubt in my mind that I can attest to his character regarding his role as an attorney and his personal integrity.

As a former bench officer, witnessing the character, forthrightness and integrity of attorneys was a daily occurrence and being able to assess such traits in counsel became indispensable in trying to achieve settlements and manage a docket. Mr. Adler was an attorney that was completely transparent in all his dealings with me and demonstrated impeccable honesty and integrity. He never once tried to gild the lily or obfuscate facts that were not favorable to him. I have settled

1

thousands of mass tort cases and have interacted with hundreds of attorneys in the process. Accordingly, it is with no exaggeration whatsoever that I can unequivocally confirm Mr. Adler's consistent demonstration of forthrightness and honesty.

This is no small feat as most attorneys will want to spin matters to a point where credibility is strained. This never occurred with Mr. Adler, and I always looked forward to having his cases before me. Credibility is an essential trait that all attorneys must have when representing their clients. Mr. Adler's honesty and integrity was never put into question, and I greatly admired not only the way he dealt with me but also the honesty he demonstrated for his clients.

To further prove my points, Mr. Adler personally called me to inform me of what was transpiring with him and the problems he now faces as a result of conduct unrelated to the practice of law. In speaking with me, I was completely taken aback with his admission of responsibility and remorse. He admitted to me without hesitation his transgressions, demonstrated accountability for his actions and tremendous regret. In today's climate, I found his honesty to be refreshing and admirable.

Did he make a mistake? For sure. Is he accepting responsibility without any excuses? Absolutely. Again, quite remarkable and must be considered in these proceedings. Moreover, he never once asked for me to speak on his behalf. I volunteered as I was very impressed with his unqualified admissions of culpability.

While this tragedy befalls his family in ways unimaginable, there is also a tragedy in the loss of a great advocate for the victims that he represented. A true loss to the profession.

I respectfully ask that you consider my comments when making your sentencing decision. I also seek your permission to speak on his behalf at the time of sentencing.

He made a mistake, will pay a price, and accepted responsibility with no excuses. However, he should be left with an opportunity to seek rehabilitation without the further destruction of a future and a chance to re-build his life.

Thank you for this opportunity to be heard and should the court have any further inquiry of me, I remain respectfully at your service.

Very truly yours,

Hon. Peter D. Lichtman (Ret.)

# EXHIBIT J

# DOUGLAS J. DIXON

620 Newport Center Dr., Suite 1300, Newport Beach, CA 92660 | (949) 226-6741 | ddixon@hueston.com

**June 9, 2022**

Honorable Cynthia A. Bashant
United States District Judge
Southern District of California
Edward J. Schwartz U.S. Courthouse
221 West Broadway
San Diego, CA 92101

**Re: Sentencing of Elliot Adler in Case Number 22-cr-0821**

**Dear Judge Bashant:**

I submit this letter in connection with the July 11, 2022, sentencing of Elliot Adler, who I understand has pleaded guilty to conspiring with former Chabad of Poway Rabbi Yisroel Goldstein to commit tax fraud in Case Number 22-cr-0821.

I've known Mr. Adler since 2018. We met in connection with lawsuits involving two wildfires that burned in Ventura and Los Angeles counties, the 2017 Thomas Fire and the 2018 Woolsey Fire. Mr. Adler represented numerous victims of those fires, and my firm, Hueston Hennigan LLP, represents the defendants, Southern California Edison Co. and Edison International. I am the lead day-to-day partner working on the lawsuits. Ultimately, thousands of plaintiffs filed suit in connection with those fires, and they were represented by well over 100 attorneys. But I came to know Mr. Adler well due to his active involvement in the litigation and our frequent interactions in connection with our combined efforts to settle his clients' cases through regular mediations and informal settlement discussions.

Through our interactions these past four years, I have come to know Mr. Adler as an honest, passionate, and experienced advocate for his clients. We didn't always see eye to eye, and indeed, the litigation was, at times, antagonistic. We likely disagreed more than we agreed on substantive legal issues. But Mr. Adler was always polite and professional. I respected the

positions Mr. Adler took in advancing his clients' claims and the way he pursued their interests. Mr. Adler was a very worthy adversary who served his clients well. Indeed, I understand that on several occasions that Mr. Adler reduced his fees so as to get his clients' cases settled.

I know that Mr. Adler feels great remorse for his misconduct. After a mediation earlier this year involving his law firm at which he was uncharacteristically missing, he called to tell me why. He explained that he had made some foolish decisions, was being investigated for tax fraud, and would be relinquishing his law license and stepping away from his firm. He owned up to his mistakes and never once sought to excuse them. Mr. Adler certainly did not have to call me – an attorney on the opposite side of cases from his clients – let alone share with me the details of his admitted lapses of judgment. But he did. And I think that speaks volumes to his character. He wanted to ensure that his (now former) clients would not be prejudiced by his circumstances and that his (now former) clients would continue to benefit from the goodwill he and I had built up over years as we worked to resolve his (now former) clients' claims.

I sincerely appreciate your willingness to consider my thoughts about Mr. Adler when determining the appropriate sentence. I know Mr. Adler is a good man. He has made mistakes for which he appears to be taking full responsibility. Rather than allowing these mistakes to define him, however, I know Mr. Adler will let them refine him as he seeks to make amends and use his talents and skills to help others.

Respectfully,

**Douglas J. Dixon**

2

# EXHIBIT K

Edward O. Manor
Attorney at Law
152 Martha Rd.
Harrington Park, NJ 07640

June 19, 2022

Honorable Cynthia A. Bashant
United State District Court Judge
United States District Court for the Southern District of California
221 West Broadway, Courtroom 4B
San Diego, California 92101

     Re: Elliot Adler

Honorable Judge Bashant,

My name is Edward Manor and I have been close friends with Mr. Adler since we met in 1998 as undergraduate students at New York University. I've known Elliot ever since to be one of the kindest, smartest, most considerate, empathetic, and thoughtful people I've ever had the pleasure of knowing.

It saddens me to write this letter because I never thought I would have to write one, let alone for Elliot. That said, when Elliot told me he got into trouble and about his desire to make amends and face the consequences whatever they be, I asked him if I can somehow help by lending my support at sentencing or before it. I told him I want the judge to know the Elliot I've come to know over the decades. The Elliot I witnessed take the sweatshirt off his back in the dead of the New York winter, to give it to a homeless person. The Elliot that routinely volunteered to help aging, lonely Holocaust survivors in the United States and Israel.

The Elliot I know is a true philanthropist and has been since he was a young man. Someone with a tender and kind heart for all of G-d's creations. The Elliot I know is a mentor and advisor. Elliot is slightly older than me. I never had a big brother, but Elliot was always the closest I had to that. Elliot always had sage advice about the trickiest of moral dilemmas. He always advocated for kindness, understanding, and empathy toward all others.

The Elliot I know is a family man that loves his wife, children, parents, and siblings very much. They've always been central to his life and always will be. Elliot is a hands-on father and has a tremendous relationship with his children that depend on his daily love and support as the central figure in their lives. I can't imagine them being deprived of their father, even for a short while. That said, I know it isn't up to me.

In closing, thank you for taking the time to read and consider my words about Elliot. He truly is an exceptional friend, father, and typically role model to all around him. I urge you to take

these factors into consideration during sentencing and rest assured that in my opinion, Elliot will never transgress again.

Should you have any questions or require further information, please do not hesitate to reach out.

Very truly yours,

Edward O. Manor, Esq.

# EXHIBIT L

## THE KANE LAW FIRM

Emerald Plaza
402 West Broadway, Suite 2600
San Diego, California 92101

Steven S. Kane
Bonnie E. Kane

Telephone: (619)
Facsimile: (619)

June 30, 2022

Honorable Cynthia A. Bashant
Judge of the United States District Court
For the Southern District of California
Edward J. Schwartz United States Courthouse
221 W. Broadway
San Diego, CA 92101

Sentencing of Enrique Elliot Adler

Dear Judge Bashant:

We are writing to you on behalf of our friend and former colleague, Elliot Adler, to request that
you consider his character, his devotion and service to his community and to his former clients
and all of his current circumstances when determining his sentence.

We have practiced law in this community since 1974 and 1993, respectively, and we have known
Elliot both as a colleague and a friend since 2008.

Through our many years of practice we have never encountered any attorney who cared more
about his clients. Elliot is a person of great moral character who made a grave error—one which
haunts him and has required him to give up his practice of the profession he loves and at which
he is extremely skilled. Based on our many years of friendship with Elliot and practicing with
him professionally, we find this error to be completely out of character.

We first became friends with Elliot in 2008 when our firm was leasing office space on the same
floor in the Emerald Plaza where Elliot had set up his office. We became friends at that time,
and we always found Elliot very willing to assist us in any way we needed.

At that time, Elliot was a sole practitioner and had no employees. We were representing
plaintiffs in the San Diego wildfire cases. Within a year Elliot began representing plaintiffs who
had been victims of the Witch Creek Fire, the Guejito Fire and the Rice Canyon Fire. We
became co-counsel on a number of cases. Steve and Elliot represented the Trustee in one of the
wildfire cases in U.S. Bankruptcy Court and tried the case together. We always found Elliot to
be an excellent and trustworthy attorney, who exhibited the rare combination of intellectual
superiority and great compassion for his clients.

Although our firm ceased representing wildfire plaintiffs once the San Diego cases were
completed, Elliot continued in representing plaintiffs who were victims of wildfires throughout

Honorable Cynthia A. Bashant
Re: Sentencing of Enrique Elliot Adler
June 30, 2022
Page Two

the state. We watched him over the years build his firm step by step, exhibiting great care for each of his clients, and assisting them in every way possible when needed.

Clients always seemed to have Elliot's cell phone number. In fact, Elliot Adler has the qualities that we wished every lawyer possessed and demonstrated. His departure from the practice of law will be a loss to both the legal profession and to the community.

Elliot worked hard to build his practice, and we had great confidence in Elliot's practice of law. We referred several high profile cases to him in which he was highly successful.

Ten years after we first worked with Elliot, our firm undertook representation of plaintiffs who were victims of the Camp Fire in 2018. Once again, we had the opportunity to work with Elliot in wildfire cases, as his firm was also representing Camp Fire victims. Although our offices were no longer on the same floor in San Diego, we often saw Elliot in Northern California. The Adler Law Group was one of the few firms selected by the court- appointed mediator in the PG&E bankruptcy case to advocate for fire victims in mediation of a plan.

Elliot has always volunteered in the community on many levels. He not only donated much pro bono work for the Chabad of Poway for many, many years, he has served as a Judge Pro Tem, and he ran for the Board of Trustees in the Mira Costa Community College District. Over the many years we have known Elliot we have always seen his desire to serve his community and causes important to humanity.

We know that even as a law student Elliot worked successfully to free a prison inmate who was wrongfully convicted.

We recall that in the early years of Elliot's practice in San Diego that he was donating many hours of pro bono work for the Chabad of Poway. We know this carried on through to the time that the Chabad synagogue was attacked in 2019, as we often discussed security for synagogues and churches with Elliot in the past several years.

We know that Rabbi Goldstein had officiated at the wedding of Elliot and his wife. We know that the Rabbi had been very helpful to Elliot's father during a difficult time, and that Elliot held the Rabbi in high esteem.

Elliot has always exhibited a great interest in education, and attempted to serve his community by running for the Mira Costa Community College District in 2014. We wholeheartedly supported him, as we too have a great respect for community colleges and the extremely important service they provide. Elliot believed that community colleges were a great resource in ensuring that our nation, state and communities make education available for all, and that the

Honorable Cynthia A. Bashant
Re:  Sentencing of Enrique Elliot Adler
June 30, 2022
Page Three

next generation is well prepared for the future.  Elliot expressed to us his perspective from
serving as a temporary judge in seeing the difficulties that some citizens experience when they
lack sufficient education.  This perspective spurred on his desire to ensure the availability of
education.  We walked precincts for Elliot's campaign and were disappointed when he was not
elected on his first attempt for public office.

Elliot's family means everything to him.  We observed over the years the great concern and care
he had for each of his three children, and how he dropped everything if one was injured or
needed special attention.  He is a very, very attentive father.  We are concerned about the
absence of Elliot from his children's lives should sentencing include incarceration.  Elliot's
resignation from the Bar is already a very heavy burden to his family's future.

We know that Elliot's plea has been heard loud and clear within the legal community throughout
the State.  We do not believe that a sentence including incarceration will have any further effect.

We ask that you consider Elliot's character and his many hours of service to his community in
sentencing Elliot.  Elliot has foregone his occupation, which, in our opinion is not only a great
loss to his family, but also to the legal community.

Knowing Elliot  both personally and professionally, we know that Elliot's actions giving rise to
the instant case were completely out of character.  We urge you to consider Elliot's long term
dedication and devotion to his family and to his community.   We hope that you will consider as
lenient a sentencing as can be issued.

Thank you for your consideration.

Very truly yours,

STEVEN S. KANE

BONNIE E. KANE

# EXHIBIT M

**Raynell Mills**
**4528 56th Street**
**Apt 2**
**San Diego, CA 92115**

June 3, 2022

Honorable Cynthia A. Bashant
U.S. District Court Southern District of California
221 W Broadway
San Diego, CA 92101

**Re: US vs. Elliot Adler**

Your Honor:

I am a teacher, school counselor, and coach at the school Elliot Adler's children attend. In my position, I meet many parents heavily engaged in their children's lives. In that way, and others, Elliot stands out amongst the parents I have gotten to know, and I am proud to count him as a friend.

Elliot is a warm and empathetic person. While he has been a great supporter of his kids, I admire the fact that he takes an interest in the entire team. He's the first parent to volunteer for anything we need and has special events off the field involving all the children, making sure they feel special. His bonds also include many long and deeply interesting conversations between us. It could be about sports or life or some topic of the day. Elliot's easygoing demeanor and sound advice provide welcome and enlightening counsel.

Elliot is not only generous with his time, he has also contributed to youth leagues supporting children who cannot afford the entry fees. I mentioned my work with underprivileged kids, and he quickly offered to provide assistance any way he could. He made an anonymous donation for two basketball teams league fees and new uniforms which helped so many kids. He is a giving person who quietly does it from his heart without seeking recognition.

Elliot has such a positive perspective on life. I could be sharing a recent setback and he always finds a way to put a positive spin on things. Even now, with his legal problems, he chooses not to wallow in self-pity. He has analyzed his mistakes, owned up to them and prepares to accept responsibility for his actions. While I know it breaks his heart to potentially be separated from his son Ben and his daughters Anna and Danielle, he focuses on how he can best help them through this. He's clearly much more concerned about their well-being than his own.

I admire Elliot and commend him for being so transparent about his situation. I know it can't be easy. Yet he continues to give and be there for other people in the face of his

own personal tragedy. He understands he made a mistake and wants to at least demonstrate to his children the correct way to deal with things under these circumstances.

Elliot is the nicest, most humble and most straightforward person you can meet. He has helped me create my own positive mindset. He has a lot to offer others and I hope you allow him to do so and return to his family promptly.

Respectfully,

Raynell Mills

# EXHIBIT N

**Sparacino Law Corporation**
314 S. Magnolia Avenue
El Cajon, CA 92020

May 28, 2022

**Submitted via email to pat@pqhlaw.com**

Honorable Cynthia A. Bashant
United States District Court
Southern District of California

**Re:     Character Letter for Elliot Adler**

Dear Judge Bashant,

My name is Demetrios Sparacino, and I'm a San Diego attorney, as well as a colleague and friend of Elliot Adler. After recently learning about Mr. Adler's circumstances, I felt it appropriate to add my testimony in support of the man I've worked with for years, and who mentored me in the ethical practice of law.

I met Elliot in 2015, when he and I worked as part of a team of lawyers prosecuting cases against Pacific Gas & Electric relating to the Butte Fire in Calaveras County, California. We've consistently worked together in other fire lawsuits since that time. We've spent thousands of hours in our work together – e.g., traveling, discussing case management, and resolving case issues. In addition to work, when spending our time in airports, or overnight in other cities, for example, we certainly discussed our respective families and our hopes and dreams.

It is my recollection of Mr. Adler's devotion to his family that pains me the most as I consider how your sentence will impact his life. For example, on those countless nights when we were in another town, eating at a diner, sitting at an airport, or driving home together, Elliot always called home to his wife Ellen, and ensured she made it through her day, and was her strength even as he was trying to build his law practice away from home. As our work schedules normalized, it was not uncommon for me to call Elliot when he was driving his kids to or from school, or at a sport practice.

Mr. Adler's devotion to his family can also be evidenced by his respect for my own family. As years passed, other fires occurred and were caused by utility companies. When asked if I would work on another litigation, my family circumstances at that time limited my ability to travel. However, Elliot was nice enough to encourage me to work with him in whatever capacity I could, even with my limitations. We found a way to continue working together and I am truly thankful

1

to him for that.  He respected how I value my family – because he truly values his.  While working with Elliot, I felt as if I was working with a family member; he is instantly likeable and treated me with respect, compassion, and patience, as I grew and matured as a lawyer.

In terms of the practice of law, I am proud to say that I've known Elliot to conduct himself ethically.  For example, Elliot has sought the opinion of ethics counsel for the purpose of ensuring he had the appropriate language on print and digital advertising.  In work-product that was sent to opposing counsel so that they may evaluate property damage claims, Elliot always had supporting evidence and never made unsupported claims.  In instances where spouses or siblings started to conflict, Mr. Adler ensured to obtain written consent or enlist outside counsel.

When we've worked together in other California cities, there were numerous times where Elliot and I were presenters at community informational meetings for fire victims.  In those discussions, I recall our understanding that we would merely tell the facts as we knew them, and let the community decide if we were worthy of their cases.

In those meetings, Elliot was very good with explaining the process of fire litigation, and answered fire victim questions empathetically, yet with confidence.  I believe this is because he knew fire victims were a vulnerable population and the attorney-client relationship had to be built with trust, and he respected peoples' intelligence to evaluate the lawyers.  In time, their trust was rewarded, as Elliot successfully represented over 3,000 fire victims throughout California.  It takes a lot to lose everything, and trust in a stranger's word that they will make things right.  And yet Elliot kept his word, and empowered <u>thousands</u> of people to rebuild their lives.  Mr. Adler's positive impact cannot be overstated.  I am extraordinarily proud to have worked with Elliot to help so many fire victims.

Elliot understands the extent to which he stands to lose everything that he has worked for, and he has expressed how remorseful he is of his actions.  After his guilty plea, Elliot explained he will likely lose his ability to practice law.  He was clear that he made a horrible mistake that hurt his family and community.  He also apologized for not letting me know he was under investigation, sooner.  While I pray this doesn't occur, Elliot told me he is facing a prison sentence, and I know his family is having a very hard time – he mentioned that Ellen is not doing well, as she faces raising their children, alone.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Mr. Adler has positively impacted my life, and my family and I are forever thankful to him for the professional opportunities, his thoughtfulness, and friendship.  I believe I know Elliot well enough to say he has already learned his lesson and will <u>never</u> do this again.  I respectfully request you accept my testimony, in your assessment of Elliot Adler's sentence.

Respectfully,

Demetrios A. Sparacino, Esq.

# EXHIBIT O

**SCHACK LAW GROUP**
*16870 West Bernardo Drive, Suite 400*
*San Diego, California 92127*

*www.schacklawgroup.com*
*alexschack@schacklawgroup.com*

June 22, 2022

Hon. Cynthia A. Bashant
Edward J. Schwartz
United States Courthouse
221 West Broadway
Chambers Rm. #: Suite 4145
San Diego, CA 92101

### RE: United States of America v. Elliot Adler
### Case No.: 22-CR-0821-BAS

To The Honorable Cynthia A. Bashant:

My name is Alex Schack, SBN 99126. I am the principal of Schack Law Group located in San Diego. I am writing in regard to Attorney Elliot Adler and his upcoming sentencing hearing. I respectfully request that Your Honor take the below into consideration at that hearing.

I first met Elliot when we were both involved in the 2007 San Diego Wildfire cases. Elliot initially telephoned and subsequently met me in person to discuss his wildfire cases. His concern was to try to recover the maximum compensation for his clients, who had been through a terrible tragedy. As a more experienced attorney, I think he believed that I could help achieve that goal. I believe that he was successful in maximizing his clients' recoveries.

I was so impressed with Elliot's abilities and concerns for his clients, that I asked him to join me in a venture to try and recover compensation for victims of the 2011 Reno fires. He did so, and we were successful in recovering excellent compensation for those victims. Again, I was extremely impressed with Elliot's concerns for our clients, and his drive to maximize their recovery. It seemed that every client wanted to speak with Elliot directly because they felt a bond had developed and they trusted him.

Elliot and I next worked the Porter Ranch Gas Leak cases together. As always, the clients trust in Elliot was evident. He is open and honest with our clients and will fight for more compensation for them when other attorneys may have taken the easy way out with a lesser settlement.

Elliot has done a remarkable job in the years that I have known him in building his practice from a one person shop to one that employs over 15 individuals. This is because he truly cares about people and it shows. The attorneys and staff at my office often comment on how pleasurable it is to work with Elliot, as he meets his deadlines and lives up to his promises, as well as being extremely courteous to everyone, from attorneys to receptionists.

June 22, 2022
Page 2

The most memorable time where Elliot's ethics shown through was about 10 years ago. Elliot was asked by another attorney to engaged in questionable conduct. Elliot refused and immediately came to me because he wanted to warn me to stay away from this attorney. This was just another aspect of Elliot's character that impressed me.

All of this is why it was such a shock when Elliot called to inform me of his transgression. It was one of those moments where time seems to stand still. I was actually about to have dinner at Oscar Wilde's restaurant in New York City (I was visiting my daughter), when Elliot called. He immediately stated that he had some bad news for me and would be forced to resign from the bar. Needless to say, I was nonplussed. He explained that he had "done a terrible thing" and made the dumbest decision of his life. While he did say that part of his motivation was to help his lifelong spiritual advisor, he was quick to state that was not an excuse and took full responsibility for his actions. He kept apologizing to me over and over again. I don't know if anyone was harder on Elliot than he was on himself, as it is just so out of his character.

As is typical of Elliot, he wanted to make sure our joint Porter Ranch clients were well taken care of. We discussed the best way to make sure they were not impacted, and we have been successful in that regards.

Elliot's transgressions obviously have had a devastating effect on his family life with his three young children. I can't imagine being away from my kids for any length of time, even now that they are in their 30's.

I understand that Elliot must pay his debt to society. But Elliot is so talented that his skills can be used for good in so many ways. To the extent that Your Honor can impose at least part, if not all, of any sentence such that Elliot is required to volunteer for 40 hours a week in a legal aid center or the like, that would allow some good to come of this terrible decision that he made. It is also worth noting that the sudden loss of a successful legal career by an attorney in their prime has been witnessed by legal communities up and down the state where Elliot recently practiced. Elliot openly discusses his regret from his poor choices, and how much he and his family have already lost as a result.

Thank you for your time, Your Honor.

Respectfully,

Alex Schack

Alex Schack

# EXHIBIT P



May 20, 2022

Honorable Cynthia A. Bashant
USDC Southern District of California
221 West Broadway
San Diego, CA 92101

Re:   Elliot Adler

To the Honorable Cynthia A. Bashant:

My name is Sami Ladeki. I am a restaurant entrepreneur, and the owner and founder of Sammy's Woodfired Pizza. It is my privilege to submit this reference letter of good character for Elliot Adler, which I do without any hesitation.

I have known Elliot since he was a kid. Always extremely respectful and a gentleman he has been as long as I have known him. As a youngster, he would open doors for people or offer to give his seat to someone in crowded waiting area. These are just some examples of how he conducted himself, and he stood out to me back then as courteous and humble kid.

He was an excellent student and high school athlete, receiving local recognition in both. As long as I have known Elliot, he has always wanted to be a lawyer. He did not come from a privileged background, but I never had a doubt that he would be successful in this profession. Nor did anyone else who knew him as a young adult.

After doing law school back east and then coming home to San Diego, I saw him spend years building his law practice. He developed it in a way that I've never seen any other lawyer do. He loved what he was doing and when started with a case he became focused on every detail of it. I would have paid him double what he charged, but he never cared about this because his true payment was the satisfaction from the work he did. In a profession where lawyers often charge a lot of money for not getting much done, Elliot was without a doubt a special resource for Sammy's.

Elliot became our go to lawyer for almost everything. On more than one occasion, he fought off class actions and won lawsuits for us that could have otherwise permanently ended our business. He never let us down. No matter how good or bad the news he would always shoot us straight. I

watched as Elliot carried this same wholesome style with his other clients. Many of them had been through life changing events and turned to Elliot in their most time of need. I cannot think of anyone better to handle a situation like this than Elliot. He also took cases when people could not find a lawyer. Like an immigrant woman in our community who had been abused and wanted to get a divorce, or someone who was being abused by a landlord with unfair eviction. His clients were lucky to have him.

It's been one of the most saddening things to watch what happened here with the rabbi. When Elliot told me about this, he did not blame anyone else. He only blamed himself. He's very persistent about this viewpoint. But I know that Elliot has always been a follower of his faith. And while I was surprised to learn about the bad judgments he made, I know that he would never would have gotten involved in anything like this without having been solicited by his spiritual leader or believing that he was providing help to his temple. I know that Elliot recognizes what he has done was wrong. He's told almost everyone he knows how bad a decision it was and how much he's lost from breaking the law.

But despite his bad judgments, I know Elliot to be an honest and law abiding person at his core, and I still wholeheartedly trust him now. I thank you for taking the time to read my letter. I hope that you will consider all of this when deciding what's fair to do. I have absolutely no doubt that Elliot will never do anything like this again.


Sincerely,

Sami Ladeki

# EXHIBIT Q

June 30, 2022

To The Honorable Cynthia A. Bashant, United States District Court Judge

Dear Judge Bashant,

I was traveling when I heard of Elliot Adler's case.  Though unsolicited, I felt compelled to offer my humble opinion on Elliot's makeup as an attorney and a human being.

I became acquainted through my sister, Bonnie Kane and later, when Elliot represented me, personally on a lawsuit from my "30-years-ago" practice in San Diego's Barrio Logan, where I practiced mostly pro-bono and where my Dad, when I proudly told him I had hung out my shingle and was charging ten dollars per hour, stated: "You're not worth that much!"

Here's what I learned of Elliot's qualities:  He is thoroughly professional, honest and dedicated to his clients in a way I have rarely seen.  Goodness, without guile, radiates from Elliot Adler.   I'm sure that "goodness" is described in dozens of deeds for others that are manifest in letters you have received.

Elliot represents, to me, the epitome of advocacy...relentless pursuit of justice for his fellow man, coupled with a kind heart.

For real lawyers the profession of advocacy is life itself. Elliot, in disbarment, will lose his life's role.

America, in my view, is about renewal...the second chance.  Please allow Elliot the
Opportunity to renew his life and his service to our community.
He is a human being of great value.

Sincerely,

Duncan L. Hunter.

# EXHIBIT R



# ADLER LAW GROUP
## A PROFESSIONAL LAW CORPORATION

July 29, 2022

Hon. Cynthia A. Bashant
Edward J. Schwartz Building
United States Courthouse
221 West Broadway
San Diego, CA 92101

Re:     Mr. Elliot Adler

Dear Judge Bashant:

It has been my honor and privilege to personally know Mr. Elliot Adler ("Elliot") since 2010 when we both became tenants in the Emerald Plaza Building in downtown San Diego. By way of background, I graduated from Indiana University in 1982 and relocated to San Diego to attend law school at California Western School of Law. I graduated in 1985 and have continuously practiced in San Diego since graduation. My own practice has been centered on civil litigation, bankruptcy and transactional matters.

Elliot and I struck up an immediate personal and professional relationship when we first met in 2010 since our offices were located next to each other.  While our practice areas were somewhat different, we did have some overlap. I've concentrated on commercial, business, real property, and bankruptcy matters over the years and Elliot would often refer matters in those areas to me.  Many times, we would associate into these matters and handle them together to conclusion. That permitted me to work very closely with him and assess his developing legal skills.  I assisted or mentored Elliot in civil litigation matters as he quickly came into his own as an experienced attorney.  During this period, I found him to be very dependable, reputable and ethical in all his professional dealings with me, clients, other counsel and the court system.  He and I tried several bench trials in state and bankruptcy court and he was well liked and his professionalism complemented by the judges in those matters.

On a personal level, Elliot and I had occasion to closely associate and interact with one another over the years and I got to know his wife, Ellen Adler. Even during the pandemic, we spoke and e-mailed one another almost on a daily basis since having to move our offices home.  We have often had meals and attended sporting events together.  Elliot included my own wife and children on some of these occasions and was generous with his time and resources.  Over the years, I've grown to think of him not only as my colleague but a brother.  I've had a number of law partners over the last 37 years of practice, but none have ever matched his integrity and generosity.

Elliot began to expand his office becoming increasingly more involved in the representation of mass tort victims.  Many of these involved clients that were fire victims from the historic wildfires located in Northern California over the last decade. I personally became involved in representing some of these clients in association with his firm.  Often the fire victims were left with nothing after losing their homes.  Few if any of them had any

*Hon. Cynthia A. Bashant*
*July 29, 2022*
*Page 2*

additional funds to prosecute such cases, retain necessary experts or even meet daily living expenses. Elliot agreed to do these matters on a contingent basis and advanced all the costs for experts and to prosecute such cases. I also know there were several times that he travelled to Northern California to personally meet with these clients and assisted them with emergency living needs with no demand or expectation of repayment. He was always generous and very ethical in all his dealings with clients.

During this period of time, Elliot also hired on associates and staff in the firm to properly handle the case load. I've had occasion to interact with many of the associates and staff members. All of them had good relationships and interactions with Elliot, and it was uplifting to see how much he cared about them. He paid them above average wages and gave them generous opportunities to excel. He did the same with me in all my financial dealings on associated cases. I know he personally mentored many of them, sometimes taking an entire day just to educate an associate, and they expressed their appreciation of his involvement. Often that is not the situation for associates or staff in a law firm environment. Rather than keep all the notable assignments for himself, he wanted his associates to experience the most rewarding aspects of practice. I believe Elliot's sincere generosity is a reason why his associates, staff, and so many other colleagues support him to this day.

I've had occasion over the years to observe Elliot's involvement with his wife and children. Prior to the pandemic, Elliot would occasionally bring his children to work. Everyone at the firm enjoyed that interaction. I know Elliot woke up extra early on weekdays to drive his children to school and was involved in their schoolwork and extracurricular activities including sports. He always made an extra effort to be with them each day. We often spoke about the importance of nurturing young children and how quickly that time passes. I know the loss of close personal interaction with his wife and children will have a profound effect on all of them. Since Elliot has never had any blemish on his past conduct or record until this incident, I would request that the Court carefully consider this issue in any sentenced imposed upon him.

Given our close relationship, Elliot confided in me his involvement surrounding donations made to the Chabad of Poway via Rabbi Goldstein. I've practiced law for many years and have become accustomed to unexpected events and human frailty. In this matter, I was completely surprised by what Elliot told me given such conduct was contrary to his nature. We've spoken since that time on several occasions about his plea and possible incarceration. While not a criminal defense attorney, I've known several past clients that have gone to federal prison. I was always surprised in my conversations with them about their lack of remorse and acceptance of responsibility for their conduct.

However, when speaking to Elliot about this matter, his attitude was the complete opposite of my prior clients. He was very remorseful and accepted full responsibility for his conduct. He wasn't going to blame others (although Rabbi Goldstein deserves far more blame and punishment for the lives he ruined than will ever be dispensed to him), fight the US Attorney's prosecution, and accepted the consequences of his poor decisions. His primary concern has always been the effect this will have on others.

I told him that his past decision cannot be "undone" but his words, attitude and conduct going forward matters immensely. Not only to those of us that care and love him, but to his

*Hon. Cynthia A. Bashant*
*July 29, 2022*
*Page 3*

friends, peers and the Court that will stand in judgment of him.  Elliot made a mistake for which he is prepared to atone.  I'm absolutely confident that Elliot will never do anything like this again.  He will not be a danger to others or a recidivist.  I believe he has truly learned this lesson the hard way.  Given the hardship it will impose not only on him, but on his wife and small children, I would urge to Court to consider the least amount of incarceration possible also considering such alternatives as a halfway house and supervised probation.

I would like to thank the Court for considering my letter.  Please contact me if you have any questions.

Very truly yours,

Geoffrey E. Marr, Esq.

# EXHIBIT S

June 22, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Dear Honorable Cynthia A. Bashant,

I am writing in support of Elliot Adler's character. I have known Elliot since I was a
child as he is my first cousin, but I got to know him better when he moved to New
York for college and law school. He would come to our house for family dinners and,
as my mother recounts, the house would always be filled with laughter. He was
always kind to me and gave me sound advice about growing up, socializing, and
choosing a career path. He was open and honest with me and I found this helpful
coming from a slightly older cousin as I struggled through my teenage years.

It was a marvel watching him develop into an amazing adult who was able to
develop his own law firm from scratch, after spending much of his early years in law
school fighting to help free wrongly incarcerated people based on DNA evidence
with the "Innocence Project" at Cardozo Law School. He carried on this strong labor
of love even later in his career, when it was much easier to forget the "little people",
as evidenced by his willingness to go above and beyond for his clients, even offering
to help a client rent an apartment in a time of need. His passion for helping others
has always been strong.

It is unfortunate that he made this error in judgement, however when he told me
about the error in judgement that he committed, I was extremely impressed
regarding his strength of character. He acknowledged what he did and plainly
stated to me that he should have known better and that he was sorry for having
done so at a time when it would be easier for most people to try to blame this error
on someone else's influence. Again, this is the sign of someone with strong moral
character who had a lapse in judgement and now it pains him that he will never
again be able to practice law, which is his passion and has enabled him to help
improve hundreds of lives. He will always suffer from this loss of privilege, and so
will his family.

Elliot is a devoted husband and father who has worked hard in his business to
support his family, but also worked just as hard to make sure that his children grow
up to be kind, respectful, and thoughtful people. His success in teaching his children
is demonstrated by the way in which I now get to see how his next generation treats

my children with the same love and kindness that he showed me when we were children.

In conclusion, while what Elliot did was certainly a poor decision, I believe that he has always had a good heart and otherwise meant to do the right thing for people throughout his life. He is passionate about his work, his family, and considering the tremendous amount of charity work that he does, he is dedicated to helping his community as well. I hope that he has the opportunity to continue to do good deeds and help others from this day forth and that you are able to judge him with leniency given his remorse.

Sincerely,


Jeremy White

# EXHIBIT T

*May 15th, 2022*

Honorable Cynthia A. Bashant

United States District Court – Southern District of California
221 West Broadway
San Diego, CA 92101

Re: Elliot Adler

Dear Judge Bashant:

I am Justin Nadi, a husband, father, business owner and longtime friend of Elliot Adler. I first met Elliot in 1998, when I was a Freshman at New York University. As our lives have evolved since then, our longstanding friendship has remained strong. Elliot has time and again, been there for me, as a sounding board and helpful hand in a brotherly, reliable and caring way.

As young students in New York, I was flatly inspired by Elliot's work ethic. He graduated with honors at NYU. He completed law school at Benjamin Cardozo while simultaneously working late nights at a law firm. I was wise enough then to realize, rarely does one encounter a person with that kind of drive and motivation. Post education in New York, he lived very modestly, went to work long hours at a firm, lived on a futon with roommates in 'then affordable' Stuyvesant Town, dressed simply, played street basketball on weekends, wasn't a drinker or partier, rarely went to restaurants and enjoyed the outdoors at every opportunity. When Elliot announced he was going to leave New York, he was sorely missed by all our mutual friends, but it was his calling to return to his hometown of San Diego.

In the mid 2000's before starting his firm, Elliot worked at the San Diego Legal Aid Society, managing casework for those who could not afford traditional legal services. He was very passionate about this work and was a devoted employee. He married in 2008 and had children shortly after. In 2009, I decided to move to San Diego with my family. Elliot was there when I arrived with my U-Haul to help me unload into my new apartment with my wife 5 months pregnant. It was such a relief then to my family and myself, to know we had a friend like Elliot we could count on, so nearby.

When my wife and I had finally purchased a home in 2015 in San Diego, we had a property dispute with an unrelenting neighbor. It was our first real home and it meant everything to us. Firms locally were quoting me exorbitant rates that I could not afford. I, of course, called Elliot for advice. He knew I needed help and rose to the occasion. While not his specialty, he could have pawned the work off on other attorneys or referred me to someone else, but instead he did what a good friend would do. He treated our problem like it was his own and worked diligently to bridge an amicable resolution.

Elliot is a loving, devoted husband and "present" father to his three beautiful children. Over the last few years, Elliot and I would speak in our car rides home after work, joke about our years in college and baffle in how much more manageable life was back then. The last few years, hours to spend together have been tough; his firm managed, active caseload for California fire victims was a tremendous load. In reflection, I am grateful for the times we did get to spend together (coffee, Sunday dinner at a pizza place,

kids birthdays, religious milestones, etc). Elliot was doing what every good husband/father should do, strenghtening his family bond during these precious years   being home for evening dinner, helping with homework, driving to and from school, sports practices/games to be present for his family   No small task for an attorney managing a diverse team of attorneys and professionals.

This part is heavy for me.  Elliot and I recently sat for coffee to discuss his guilty plea and its consequences.  I am a firm believer that one cannot properly make amends for something they cannot admit.  Elliot unequivocally acknowledges his wrongdoing with sincere remorse.  He knows his incarceration will result in significant physical and emotional hardship on his family, colleagues and friends.  He has bravely, honestly and appropriately accepted full responsibility for his actions.

   Your Honor, I am grateful for your time to read this letter. This is a chapter I am certain Elliot wishes to permanently close and never reopen.  It is with great humility that I request your utmost leniency for my dear friend, Elliot Adler.


Sincerely,

Justin Nadi

# EXHIBIT U

# MORRIS LEVY CPA, P.C.

CERTIFIED PUBLIC ACCOUNTANT
347 5th AVE
SUITE 1208
NEW YORK, NY 10016
TEL:(212)          *  FAX:(212)
Email:

June 20, 2022

Honorable Cynthia A. Bashant
United States District Court Judge

Re: Mr. Elliot Adler

Honorable Cynthia A. Bashant,

My name is Morris Levy, and I am a CPA licensed in New York. I have known Elliot Adler for over 20 years. We attended New York University together and continued a strong friendship ever since. Elliot continues to guide me through some very difficult circumstances in both the business and personal sides of my life. I'll briefly summarize a couple of instances which will illustrate just how instrumental he was in helping me through a difficult time.

First, I was involved in my parent's catering business a few years after graduating college. Soon after I joined, we were approached by a competitor who offered an alliance/merger. We accepted the terms at the time, but once Elliot heard the details and read the contract we were presented with, he warned me that this competitor had bad intentions, and that their end goal was to drive us out of business. Elliot was able to save my family's business as he guided me every step of the way, through a myriad of contracts, letters of intent, negotiations, and ultimately the avoidance of costly litigation. And he did so pro bono.

The other example is from my personal life. Around 10 years ago, my now wife and I faced a very significant and deeply personal issue. Elliot spent considerable time providing counsel to discuss the issue. Ultimately we took Elliot's advice and to this day we cannot imagine how differently our lives would have turned out had we not done so.

When I think of Elliot's greatest qualities, it is his strong devotion to his wife, his family, and his friends.

I thank you for taking the time to read this letter. Please consider the examples above as a testament to Elliot's true character. He is a mensch (a Yiddish term for a person of high integrity and honor) in every sense of the word. I am confident he will never do anything like this again.

Very truly yours,

Morris Levy

# EXHIBIT V

**Jim Neil**
Executive Vice President, Partner
BRE Broker Lic. 01352736

Phone ████████████
Fax ████
jim.neil@kidder.com



May 31, 2022

Honorable Cynthia A. Bashant
United States District Judge
c/o Law Offices of Mr. Patrick Hall

Re:    Mr. Elliot Adler

Dear Judge Bashant,

The purpose of this letter is to provide you with a character reference for my dear friend, Elliot Adler, and to kindly ask you to consider other aspects of his background when considering what sentence to impose on him.

I am a San Diego-based commercial real estate broker and investor with over 30-years in business.  I have known Elliot for approximately 10-years.  He is kind and warm person, who routinely treats others with respect and generosity. Solely because of his personality and temperament, I asked if Elliot would take on my son, Jimmy, as a summer intern at his law practice between his Freshman and Sophomore years in college at George Washington University.   When considering who I wanted to mentor my son, Elliot was at the very top of my list.  I can think of few others that could be such a positive example of decency, ethics, hard work, and responsibility.  As a devoted father of two, this decision was one I took very seriously, and to this day do not regret.

While Elliot managed an office of many high-level attorneys, he took considerable time with Jimmy, directly supervising him at times as he developed very meaningful skills to work with clients. I have no doubt that Elliot went out of his way to build my son's confidence and provide him an inspiration and skill set to do impactful work in the community. The fact that Elliot took the time to directly mentor an intern shows the kind of person he is. The experience and Elliot's mentorship ultimately influenced my son to very seriously consider going to law school.

I have also seen Elliot mentor his own son, Ben.  Elliot is a great Dad and his three children relish their time with him.  He encourages and compliments them, builds their confidence, stresses the importance of education, takes them out on the basketball court, and models good sportsmanship.

I have also represented Elliot in the purchase of a commercial property and witnessed his conduct and integrity in a business transaction.  From the Seller's perspective, he



was straight forward to deal with and completed the transaction with no nonsense as proposed.  From my perspective, he treated me with tremendous respect and kindness throughout the process.  Having sold over $2-billion in commercial real estate in my career, this is uncommon.  He genuinely solicited and considered my advice through the process and appreciated my involvement.

I was completely shocked when I learned that Elliot was involved in this tax crime.  This is far from the person I know.  But the way he dealt with it was more consistent with who he is.  He confronted it directly with the community, admitting his bad choices and quickly rejecting any other possible contributing reason for doing what he did.  He knows what he did was wrong and is paying a heavy price.

I know firsthand that Elliot has agonized over what he has done and the pain he has caused his wife and children.  He is deeply remorseful. He tells anyone who will listen about his bad decisions, including all the millennials that look up to him, how wrong it is to break the law, and how much you can lose from it. He does not want other people to make the same bad choices he did.

I know his heart and I know his character and I believe very strongly that Elliot will move past this and will not only continue to be a positive impact but will grow as a result.  I believe that relinquishing his license to practice law, the impact on his family, his personal and professional relationships, and the guilt and emotional burden he carries as a result of this dumb decision are heavy penalties and I implore you to consider this as you deem appropriate for Elliot.

Thank you very much for your consideration.

Most sincerely,

Jim Neil
Executive Vice President

# EXHIBIT W

May 6, 2022

Honorable Cynthia A. Bashant

United States District Judge


RE: Elliot Adler


Dear Judge Bashant:

My name is Nathan Adler and my wife is Caren Adler. We are Elliot's parents. We were both born and raised in San Diego County where we have lived for well over 60 years. We consider living in this community a wonderful privilege while having the opportunity to raise 4 children that have grown to be the pride of our lives.


My wife and I have always considered our oldest son, Elliot, to be a kind-hearted, hard-working man of good character. Throughout his life, he has consistently respected his parents, and helped us in any way he could. We quickly learned to understand and appreciate his work ethics when he went on to college, took out student loans and worked multiple jobs in order to assist us in paying for his undergraduate university degree. We can remember how excited we were the day Elliot was accepted into law school, but equally worried about how we would be able to pay the associated excessive tuition. We remember to this day the smile on his face and his comforting words assuring us that he would get a job and simply work his way through law school.


Not only did our son get a job and work his way through law school, but he went on to volunteer his time participating in the prestigious "Innocence Project" which assisted convicted prisoners who could be proven innocent post-conviction through DNA testing. After reviewing many sets of files, Elliot chose the case of Neil Miller who had spend the last 10 years in prison. After his generous unrelenting legal effort as a law student, it was sincerely a heart-warming day on May 11, 2000, when we were forwarded a memorable picture and article in the "Boston Herald" showing our son hugging Neil Miller outside the Suffolk County Courthouse where he had been freed from prison. The bold newspaper headline stated: "Innocent man free after long 10 years".  On that proud day, my wife and I can remember expressing to each other what a decent man we had raised, and what a great legal advocate for justice he would become.

-1-

Elliot did not disappoint us. Within time, he got married, started a family and worked very hard to open his own law firm. He has proven to be a devoted husband and an extraordinary father to our 3 grandchildren. When it comes to his family, he does all the important things right. Whether it be driving his kids to school each day, helping with the homework, attending a dance recital, or cheering them on at his children's sporting events. Despite an incredibly busy schedule, it's been our observation that his wife and children can always count on Elliot's warm support, advice and counsel. As the years have gone by, we can sincerely attest to the exceptional manner my son and his wife have jointly raised remarkable and respectful children. As the phrase goes, "the apple doesn't fall far from the tree."

One truth we know about Elliot is how hard he has worked to build up his law firm. He is very humble about it, but we know that from the first day he opened his practice, he has been a fierce advocate for his clients. I know that Elliot at times had to sleep in his car when working out of town to meet with clients. I also know that on many occasions, he helped financially suffering clients by giving them money to rent an apartment, buy school supplies for their kids, or even a much-needed surgery. We're not that familiar with the law professional, but it appears to us that he's gone way beyond what most lawyers do for their clients.

My wife and I realize that Elliot has committed a colossal error in judgement for which he has accepted full responsibility. Elliot, my wife and I are clear-headed about the fact that there are consequences for his actions. We understand that as a result of his conviction our son will have to relinquish his license to practice law. We have witnessed firsthand how much he has anguished over losing his right to represent the clients he cares so very dearly about. As we indicated, there have been many sacrifices made to earn the right to hold that precious law license, and now that right, along with the life he has worked so hard to build has been destroyed. To say the least, the impact of this prosecution has been devasting for Elliot, his wife, his children and our family.

Elliot will pay dearly for his mistake, and yes, he entered a guilty plea to a tax related charge. That is not in dispute. But as his parents, we do feel compelled to provide the court with a brief explanation concerning our family's relationship with Yisroel Goldstein. Many years ago, our family became members of the Chabad of Poway congregation. We introduced Elliot and our children to the then Rabbi Goldstein. When we first met him, he treated our family with respect. We had always taught our children, as our parents had taught us, to be respectful of a Rabbi and to listen to their sage advice. Over the years, Rabbi Goldstein used his position as a religious leader to work his way into the full trust of our family. When it was time for Elliot to be married, of course it was Rabbi Goldstein who conducted the ceremony. He was naturally involved in life cycle events including the birth of children, so on and so forth. He was undoubtedly the trusted man that we depended on for our religious and spiritual needs.

-2-

Eventually, my wife and I moved out of the Poway community becoming members of an entirely different synagogue and Rabbi. But regrettably, Elliot continued his association with the Poway Chabad and this evil man. Little did any of us know what this deceitful person was plotting, even when our son was contributing countless hours of good faith pro bono legal work to a man he admired and trusted. As the world now knows, this guy was nothing more than a crooked master manipulator. A man using his sacred Rabbinical position of trust to lay a lot of guilt on Elliot about needing him to help support the synagogue.

Elliot should have known better when he was first solicited to participate in this tax scheme by Goldstein. No doubt, it was just bad judgement. But looking back on our relationship with Goldstein, it is now very clear to us that the rabbi used his position as a religious leader to influence people with the worst of intentions. As it turns out, we feel reasonably certain that the rabbi's sole devious motive was simply to manipulate Elliot to induce him to contribute monies, which the rabbi pocketed without any consideration as to what the ramifications would be to his trusted prey.

After speaking to our son in depth, he fully recognizes the grave mistake he has made. He will pay an enormous price with the loss of his license to practice law along with the many hardships he will bring to his loving wife and beautiful young children. We can assure you that he is truly remorseful for his actions. We are very confident that Elliot has learned an extremely difficult, but important lesson from this whole ordeal, and we are sure he will never do something like this again.

We thank you, Judge Bashant, for considering our letter and ask that you please take our son's individual circumstances into consideration as you determine his appropriate sentence.

Very truly yours,

Nathan S. Adler

Caren Adler

-3-

# EXHIBIT X

May 8th, 2022

Honorable Cynthia A. Bashant
U.S. District Court Southern District of California
333 W Broadway #420
San Diego, CA 92101

Dear Judge Bashant:

I am writing to you today regarding the sentencing of Mr. Elliot Adler, who you are tasked with determining in the matter of the federal prosecution related to Mr. Adler's taxes.  Outside of the scope of the law, I am writing to you to provide you with some insights to Mr. Adler's character and personal background, which I believe need to be considered in formulating your final decision.

I have known Elliot for over 10 years as a neighbor, acquaintance, which has built into friendship along the way.  I live in the Carmel Valley area and, through mutual friends, met and grew to know Mr. Adler in both social and professional settings.  I also work for a firm that is located next door to Mr. Adler's firm.  I would see and speak to Mr. Adler often discussing topics such as family (I am acquainted with his wife and children from neighborhood events, at the market, or local restaurants, etc.  Here are my insights from these interactions:

- Elliot is a sincere, engaged, and loving family man.  His wife and children are the most important thing in his life is his family.   In both action and word, I could sense his commitment to his wife and children even though it was not something needing discussion.  Observationally I could sense his devotion to his children through his action and interactions with them.  Also, seeing how he looks at them with his smile that shows his pride and commitment to them when looking at them or speaking of them – it is a fact that is a major part of him.

- Mr. Adler is also a dedicated professional, and his clients confirm this.  Working in an office environment with a shared lobby and conference room facilities, I have had the opportunity to see and speak to his clients when they came for meetings.  I would, of course never discuss their business purposes with them, but observed their respect and graduate when speaking of or interacting with Mr. Adler.  Having been involved with client services and case management for many years, I can read people and their intentions.  It is this experience that I believe gives me this observational conclusion.

- I am not an attorney but do work for one in the technology and case management areas of a significant local firm that, like Elliot, has been involved is several significant Mass Tort cases, including the Wildfire litigations throughout California.  This makes our firms competitors.  And, the principal of our firm is a VERY competitive attorney, so being friendly with the competition is not usually something that usual.  However, based upon the knowledge of his professionalism and his commitment to his clients, we never would have any concern for a prospective client that decided to have Adler Law Group represent them.  In a few cases, were a client could not decide, we would be comfortable enough to have both firms joint together as co-council.  This could only occur with the trust and respect we have in Mr. Adler.

- Regarding the actions that has brought Mr. Adler to your attention, they are not forgivable. However, Elliot was the one that reviled the facts to me unsolicited. He readily took responsibility for his actions. "I screwed up!' was included in his disclosure, and true regret for his actins were most evident.

- Regarding Rabbi Goldstein, who I also have met and have had a few interactions with, I am also aware of his influence over Elliot due to his history in the Adler Family's lives. After the Chabad of Poway shooting event, I observed how it affected Elliot. We all felt the aftershock of this event, especially as a Jew, but in Elliot, I could see it was much deeper. Upon my conversations, I gained insight into how significant the Rabbi was in his life. The Rabbi who married him, the Rabbi who taught him and his children. The rabbi who would lead prayer in High Holiday services, officiate at Bar Mitzvahs, conduct funerals, etc. since Elliot's youth conveys a great deal of institutional influence to anyone, apparently even more so to Elliot. This influence does not diminish Elliot's actions, but are important to consider when you are trying to determine how he got to the situation you are tasked with judging.

I know you have a difficult job when making your ruling in this matter, but I ask that you do take into consideration the following, time in jail would server no purpose in adding to the punishment Elliot's actions have already been placed upon him. His esteem in the community has caused shame to both himself and to his family which in the case of Mr. Adler is a significant punishment; he will lose his ability to practice law, which is almost as important to his love of family; he has had a significant economic impact on him because of his loss of his law license, and he has lost, rightfully, his professional pride and respect.

I appreciate your time to read this letter and hope you gain some insight from it. I will respect any decision you make, but strongly recommend that consider no jail time for this defendant. He has, as you are aware, taken responsibility for his actions and has stated that he will never disobey any law ever again. I believe him. I also believe his sincere commitment to the community to make amends for his actions.

Respectively,


Gary Miner
Director of Systems and Technology
FRANTZ LAW GROUP, APLC
E-mail:  gminer@frantzlawgroup.com
Web:  www.frantzlawgroup.com
Toll Free:  ▮▮▮▮▮▮▮▮
Fax:  ▮▮▮▮▮▮

**SAN DIEGO**
Emerald Plaza
402 West Broadway # 860
San Diego, CA 92101
Ph ▮▮▮▮▮▮▮

**LOS ANGELES**
Century Plaza Towers
2029 Century Park East #400
Los Angeles, CA 90067
Ph ▮▮▮▮▮▮▮

**SAN FRANCISCO**
201 Mission Street
12th Floor
San Francisco, CA 94105
Ph ▮▮▮▮▮▮▮

**SANTA BARBARA**
Santa Barbara Office
7 West Figueroa Street
Santa Barbara CA 93101
Ph ▮▮▮▮▮▮▮

**SACRAMENTO**
770 L Street, Suite 950
Sacramento, CA 95814
Ph ▮▮▮▮▮▮▮

**VENTURA**
1500 Palma Dr.
Ventura, CA 93003
Ph ▮▮▮▮▮▮▮

**FRESNO**
8050 N. Palm Avw. #300
Fresno, CA  93711
Ph ▮▮▮▮▮▮▮

**ST. HELENA**
1030 Main St, Ste 212
St. Helena, CA 94574
Ph ▮▮▮▮▮▮▮

**SANTA ROSA**
Fountaingrove Center
3558 Round Barn Blvd #200
Santa, Rosa, CA 95403
Ph █████████

**CHICO**
236 Broadway Street
Suite B
Chico, CA 95928
Ph: (530) ██████

**BAKERSFIELD**
4900 California Avenue
Tower B, 2nd Floor
Bakersfield, CA  93309
Ph █████████

**HAWAII**
7 Waterfront Plaza
500 Ala Moana Blvd. #400
Honolulu, HI 96813
█████████






# EXHIBIT Y

June 27, 2022

Hon. Cynthia A. Bashant
United States District Judge
Southern District of California
Edward J. Schwartz U.S. Courthouse
221 West Broadway
San Diego, CA 92101

Re:     Elliot Adler

Dear Judge Bashant,

I am Elliot Adler's younger brother and have known him all my life. As my oldest sibling, I have always looked up to Elliot. We did not come from a privileged background, but our family placed a high value on sincerity and always trying to do the right thing. Growing up I watched Elliot show tremendous respect to his teachers, elderly people, law enforcement officers, and younger kids such as my own friends.

One aspect of Elliot's character that has always stood out to me is his kindness toward the homeless community. I remember when he lived in Pacific Beach and he would get together with the people that lived in his complex and make large pots of soup.  They'd go out to the beach and serve homeless people every Thursday evening. He truly enjoyed this. I cannot remember one time being with Elliot when we have encountered a homeless person and Elliot did not give them something. If not money than food or clothing. He one time gave a new pair of shoes to a homeless man. When I asked him why he didn't just give his old pair of shoes, he remarked that nobody would want his old pair of shoes. Elliot is very sensitive to people with mental illness, and it is inspiring to watch his kindness.

Elliot is also extremely devoted to his family. He's involved in every aspect of his children's lives. My first child was born less than a year ago, and Elliot has been my role model for how to be a good father. He does homework with his kids, stays home when they are sick, gets up with them in the middle of the night, and somehow found the time to be Ben's little league coach. He dedicates everything he has to his family and their love and dependence on him is easily observed.

Watching Elliot build his law practice was a special lesson for me in hard work, and how nothing good comes easy. Elliot "worked his way through school", at first driving a taxi back before the days before Uber and Lyft. He slept in a tent for some time period to save money, and still managed to be at the top of his law school class. I think this experience humbled him and helped him relate to his clients in later years. But whether it be this or the blood, sweat, and tears he put into his practice over the last 20 years, it seemed like everyone felt comfortable talking to Elliot about their most personal issues. I have always been proud to tell people that Elliot is my brother.  For those that did not know me, it was an instant credibility. I know it hurts Elliot so much to have lost his reputation as an honest and hardworking man. It took him so much longer to build up his reputation than it did to lose it. But knowing my brother, what probably feels worse is to lose his law license, because he no longer can help other people in the same way or get the same kind of fulliment.

Elliot was very close with Rabbi Goldstein.  He viewed Rabbi Goldstein as a mentor and someone who had been very significant in helping our family when we needed his help the most. Elliot will be the first

to admit that he committed a crime. He does not avoid owning the fact that he on his own made a bad choice. But I have not a doubt in my mind that Elliot had his guard down with Rabbi Goldstein. Much like the way Elliot guided me so many times into uncharted waters, there was a certain level of blind trust Elliot had for Rabbi Goldstein. It is saddening that Rabbi Goldstein did not use that trust to only do good things with my brother. I know my brother would have followed him that way too.

I appreciate you taking the time to read my letter, and hope you will consider it when you making your decision at Elliot's sentencing.

Sincerely,

Gabriel Adler

# EXHIBIT Z

May 25, 2022

To: Honorable Cynthia A. Bashant
      United States District Judge

My name is Raymond Poliakoff. I am an Emergency Department physician at Kaiser Permanente in San Diego. I have worked at Kaiser for 44 years. I was Chief of the department for 10 years. I currently work as a partner emeritus in the department.

I met Elliot Adler approximately 17 years ago when I lived in Poway. He was starting his law practice and we played on the same city softball team. I knew his parents, who also lived in Poway. He subsequently got married and moved to Pacific Beach.
Five years ago, once our children were grown and out on their own, my wife and I moved to South Mission Beach. We attended services at the local synagogue, where I renewed acquaintances with Elliot.

The news of Rabbi Goldstein's involvement with tax scams that he created and pursued with some of his congregants and family shook the entire Jewish community. When the list of those involved was published, we were shocked to see several acquaintances on it, one of which was Elliot.

Over the last 2 1/2 years, I saw Elliot at synagogue almost every Saturday morning with his children. His son was preparing for his Bar Mitzvah. I never spoke with Elliot about his involvement with Rabbi Goldstein during this time. Once the information hit the newspapers, I decided to broach the issue with Elliot, wondering how he was handling the fallout from the case at home with his wife and children. He was extremely candid, saying that he was using himself as an example to his children of how not to behave. He told them integrity was paramount and he felt like he abandoned that concept when he became involved with Rabbi Goldstein. He told them he had done something wrong and that this had consequences and he would and should be punished.

I am writing this letter in support of Elliot because I am struck by the dedication Elliot shows to his family. Even with all this hanging over his head, he brought his children every week to Sabbath services. He sat next to his son, going over all the prayers that he would be doing at his Bar Mitzvah. The kids obviously enjoy a very close bond to their father. He has acknowledged his mistakes to them. Whatever punishment he must undergo, I hope time away from his family is as short as possible. His family needs him. Please feel free to call if I can be of any further assistance.

Sincerely,
                    akoff, M.D.