# EXHIBIT AA

July 1, 2022

Jeromey Lewis
16147 Cayenne Creek Rd
San Diego, CA 92127

Honorable Cynthia A. Bashant
UNITED STATES COURTHOUSE
221 West Broadway
San Diego, California 92101

_United States v. Elliot Adler_

Dear Judge Bashant:

I am Jeromey Lewis, and I submit this letter as a character reference for Elliot Adler. Our families have been close friends for 15 years.

My wife Anna and Elliot's wife Ellen met when our daughter Sasha and Elliot's son Ben were infants. Anna and Ellen brought the families together as we bonded around the experience of being newly minted parents, learning the ropes, joining playgroups, and spending time at our local playgrounds.

To this day, those bonds remain strong. What started as taking our young kids to "Music & Me" programs to expose them to playtime, music, and community, is now couples date nights and family concert outings. Through it all, we remain committed to the centrality of family and community as a priority in our lives.

Elliot exemplifies what it's like to put family first. Sometimes, when I want to get together to spend time with him one-on-one, Elliot will turn me down to be present for his son Ben or his daughter Anna. This does not surprise me. We have been doing family life together for so many years that I know his priorities. You will not find more dedicated parents than Elliot and Ellen.

For example, Elliot and I coached Little League when the boys were younger. And his involvement in our local community all of these years has been exemplary. Elliot, his father, and his brother are all part of the community because they want to provide a strong, fun, and healthy community for their families and others.

Elliot has always been generous, dedicating valuable time and resources to community activities. I remember one time Elliot organized and covered the cost of a trip to a hockey game for all of the kids in our Little League team. Whenever he had to pick up or drop off some of the kids on the team, or otherwise go out of his way to help others out, Elliot was always happy to help.

At his core, Elliot is the consummate family and community man who prioritizes people over his demanding career. I admire and respect him very much. I understand that people make mistakes. No one would benefit from taking him away from his family and our community. I implore the Court to view my friend Elliot with mercy.

Respectfully submitted,

Jeromey Lewis

# EXHIBIT BB

Anna Lewis
16147 Cayenne Creek Rd
San Diego, CA 92127


July 2, 2022

Honorable Cynthia A. Bashant
UNITED STATES COURTHOUSE
221 West Broadway
San Diego, California 92101

Dear Judge Bashant:

My name is Anna Lewis. I respectfully join my husband, Jeromey Lewis'
character reference letter for our dear friend Elliot Adler.

I also write separately to share a specific story illustrating Elliot's humanity
and generous character.

As a mother, I will be forever grateful to Elliot for his tireless advocacy on
my family's behalf 15 years ago. We had only recently met Ellen and Elliot.
My daughter Sasha was just eleven months old. At the time, our family
endured a significant medical crisis with Sasha, exacerbated by
negligence at the Children's Hospital. Jeromey and I were overwhelmed
and exhausted when Elliot – himself a new parent and young lawyer
-stepped in, offering to handle all the legal wrangling that ensued,
completely free of charge.

Elliot achieved the result we needed, which was not easy. The process
lasted months and required numerous letters, paperwork, and tenacious
follow-up and advocacy on our behalf.

In the end, we were held harmless for significant medical bills. The hospital
also compensated us for the negligence that occurred. Most of all, Elliot
did what he did for us from the heart. And over the 15 years since, we have

witnessed his generosity and selflessness towards others numerous times. That's just who Elliot is.

I hope my experience is helpful to the Court in considering Elliot's case. I respectfully request all available leniency for my friend.

With all my respect,

Anna Lewis

# EXHIBIT CC



401 WEST A STREET
SUITE 2600
SAN DIEGO, CA 92101-7910
PHONE: (619)█████
FAX: (619) 696-1410
HIGGSLAW.COM

**Edwin M. Boniske**
Partner
*boniske@higgslaw.com*
D █████████

June 27, 2022

Hon. Cynthia A. Bashant
United States District Judge
U.S.D.C., Southern District of California
Edward J. Shwartz United States Courthouse
221 West Broadway
San Diego, California 92101

> **Re:   Elliot Adler**

Dear Judge Bashant:

I am writing on behalf of Elliot Adler, and to provide a character reference in connection with his upcoming sentencing.

My name is Edwin Boniske.  I am a litigation attorney with an employment-defense practice, and I am partner at Higgs Fletcher & Mack LLP.  My family and I have known Elliot for more than 10 years, starting when our oldest children entered preschool together at the San Diego Hebrew Day School.  Elliot's two oldest children are the same ages as my two oldest children (currently entering 8th grade and 6th grade), and our children have been classmates and close friends since the time that they met.  Elliot's family (his mother, grandmother, etc.) have also been close friends of my wife's family for more than 40 years, such that our families run into each other frequently at social gatherings.  I have had the opportunity to get to know Elliot and his family very well over the last 10 years, and I consider him a good friend.

I have always known Elliot to be a kind, humble, and generous person.  He is not only a pillar of the San Diego Jewish community, but is a devoted father and husband.  At the same time he was running a successful law practice (which he built from the ground up), Elliot still managed to make time to drop his kids off at school every day and attend every basketball game and other extracurricular activity which his kids were involved.  It was rare to see Elliot when he was *not* doing something for his kids.  I know from firsthand experience it is not always easy to make that time available while you are trying to build a law practice.

The news of Elliot's charge, and his subsequent plea, came as a complete shock to me.  I have known Elliot for years, but this was entirely out of character.  I spoken with Elliot directly about the matter, and I can tell you firsthand how deeply this process has affected him.  He was incredibly remorseful and embarrassed by the situation.  I also understand he has agreed

HIGGS | FLETCHER | MACK

Hon. Cynthia A. Bashant
June 23, 2022
Page 2

to relinquish his license to practice law, which was devastating to Elliot (as he has devoted years of his life and thousands of hours towards building a practice that he can no longer be involved with). Elliot was at the peak of his career as an attorney when it abruptly came to end. The loss of his successful practice and his legal career overnight has stunned many people in the community, and has undoubtedly sent a strong message.

I would urge you exercise leniency in determining the appropriate sentence. Elliot is the "rock" of his family, and his children will suffer in his absence. He made a life-changing mistake, but I can state with certainty that this conduct is not an accurate reflection of who Elliot is as a person. He has accepted responsibility for his actions, both in his plea deal and privately, and is committed to making things right through paying restitution and penalties. I understand that the crime Elliot is accused of committing carries steep penalties, but I urge you to also consider the anguish a lengthy sentence will cause on Elliot's small children and to exercise compassion in that regard.

Sincerely,

EDWIN M. BONISKE
of
HIGGS FLETCHER & MACK LLP

# EXHIBIT DD

**HOWARD OST**
**1921 Edgemont Street**
**San Diego, CA 92102**

June 30, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Your Honor:

My name is Howard Ost, and I am pleased to write this letter of support on behalf of Elliot
Adler. Elliot and I have known each other for over ten years. I am a paralegal, and Elliot rented
office space with the firm I worked for. We have worked together professionally and have also
built a great friendship.

I have always appreciated Elliot's honesty and how he genuinely cares for his friends. Elliot is
very devoted to his family. They are his number one priority, and he has accomplished a
commendable work/life balance that I admire.

Elliot has a servant's heart and is always looking to help others. Many years ago, he volunteered
pro bono legal services to help a man who was wrongfully convicted of a crime get released
from prison. What I found more benevolent was the degree to which Elliot later followed up with
him, further assisting the man and helping him successfully return to society. I understand that
Elliot went with him to speak at conferences and assisted him with getting a job. That truly
speaks to the type of person Elliot is and how he has been an example of what lawyers should be.

When Elliot first revealed his criminal misconduct to me, I shared with him that I was
disappointed with him and was very surprised that he would have done something like this. But
I was impressed at how he took full responsibility for his mistakes. He was emotional and very
remorseful. I know he will do whatever he can to make amends. Elliot understands that his poor
decisions have caused significant pain to his family, his profession, and many others. I have
complete confidence that Elliot has already been rehabilitated and that whatever additional
consequences he may face will only strengthen his resolve to do better. I ask that this court
consider Elliot's strong and compassionate character in granting him appropriate leniency.

Sincerely,

Howard Ost

# EXHIBIT EE

**Frantz** Law **Group**
A Professional Law Corporation

Emerald Plaza ▪ 402 West Broadway, Suite 860 ▪ San Diego, CA 92101
Tel ▓▓▓▓ ▪ Fax ▓▓▓▓ ▪ frantzlawgroup.com

May 27, 2021

Attn: Hon. Cynthia A. Bashant
Edward J. Schwartz, United States Courthouse
221 West Broadway, Suite 145
San Diego, CA 92101

**Re Elliot Adler**

Dear Judge Bashant:

My name is Regina Bagdasarian and I am an attorney at Frantz Law Group, APLC. I have known Mr. Adler for the eight years I have been with the firm as his offices are on the same floor as our firm. I have worked with Mr. Adler from time to time and have always found him to be committed to his clients and diligent in his work on their behalf.

I am personally aware of Mr. Adler's commitment to his clients. He shared with me that he had loaned money to a client who was a victim of the Paradise Fire so that she could obtain stable housing. The client was living in her car with her young child and was terrified that she would lose her child due to her circumstances. Although settlement of the client's case was not imminent, Mr. Adler was moved by her plight and assisted her with the necessary funds to protect her relationship with her child.

Mr. Adler was also personally encouraging to me as I began my legal career. We often separately represented clients in various litigations and his willingness to brainstorm ideas and collaborate on issues affecting our clients was extremely helpful. His support and friendship have been a positive influence on my legal career as I came to rely on him for his experience and wise counsel.

Mr. Adler has shared with me his remorse for becoming involved in the situation at hand. He has further expressed his commitment to rehabilitation and desire to make a positive impact in the future so as to not be defined by this mistake. It is my understanding that this circumstance has been particularly devastating for his wife and his three children and more than anything this weighs on Mr. Adler.

In light of my conversations with Mr. Adler, I am optimistic that he will never engage in any similar misconduct again. It is my hope that this Court will consider the totality of his contribution to those in need and his commitment to rectifying his mistakes when determining an appropriate sentence.

Sincerely,

M. Regina Bagdasarian, Esq.
Frantz Law Group, APLC

| SACRAMENTO | LOS ANGELES | SAN FRANCISCO | RIVERSIDE | BAKERSFIELD | FRESNO |
|---|---|---|---|---|---|
| 770 L Street | Gas Company Tower | 71 Stevenson Bldg | Turner Riverwalk | Cal Twin Towers | River Bluff |
| Suite 950 | 555 West Fifth Street | 71 Stevenson Street | 11801 Pierce Street | 4900 California Avenue | 8050 N. Palm Avenue |
| Sacramento, CA 95814 | 31st Floor | Suite 400 | Suite 200 | Tower B, 2nd Floor | Fresno, CA 93711 |
| Tel ▓▓▓▓ | Los Angeles, CA 90013 | San Francisco, CA 94105 | Riverside, CA 92505 | Bakersfield, CA 93309 | Tel (559) 400 7177 |
| | Tel ▓▓▓▓ | Tel (415) ▓▓▓▓ | Tel (951) ▓▓▓▓ | Tel ▓▓▓▓ | |

# EXHIBIT FF



**Dart Law**
12625 High Bluff Drive, Suite 300
San Diego, California 92130
www.dartlawfirm.com

**Matthew B. Dart**
matt@dartlawfirm.com
**T**
**M** ███████

June 29, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

**Re:     Elliot Adler**

Dear Judge Bashant,

My name is Matthew B. Dart, and I am an attorney in good standing and admitted to practice before this court and all California courts. I write to you not as a legal representative, but as a friend of Elliot Adler, and to offer my thoughts and experiences for your consideration.

I have known Elliot for more than a decade. We became friends while belonging to the same gym where we play basketball and tennis together regularly. We also had our professional careers in common, and spent many hours discussing each other's cases and legal issues. I have watched his legal career blossom into a very successful practice representing victims of fires and natural disasters, fighting for their rights and holding government and big business to account.

I admire and respect Elliot personally and professionally. When he called to let me know about his transgressions, I was in disbelief. Of all the people I associate with professionally and socially, Elliot would be near the bottom of the list of persons that I thought would engage in the wrongful conduct he described. I was not surprised, however, that he has accepted responsibility for his actions. That is the person that I know – someone who made a serious mistake, but one who accepts the consequences that follow.

With respect to consequences, my understanding is that Elliot will lose the ability to practice his career profession. He will lose his successful law firm and the numerous attorneys that work for him. That is a devastating consequence for a man in the prime of his legal career. That public fact also sends an unmistakable message to the local legal community. I, for one, have heard that message loud and clear, and I am aware of multiple discussions within member groups of our local bar regarding Elliot's case and the professional implications of it.

 DART LAW

Honorable Judge Cynthia Bashant
June 29, 2022


With respect to sentencing, I recognize that the Court has an interest in sending a message to the public that the conduct for which Elliot has accepted responsibility cannot be tolerated.  I respectfully suggest that, with respect to the local legal community, that message has been clearly sent already.  For that reason, in my view adding imprisonment to Elliot's punishment would be unnecessary to accomplish the Court's objective.  Elliot has lost his legal career, and he, his wife and his children will suffer the permanent implications of that consequence.



Very truly yours,


**Dart Law**


Matthew B. Dart, Esq.

Admitted to practice in California

# EXHIBIT GG



בס"ד
**Building future leaders:**
**Jewish, successful, proud.**

Rabbi Simcha Weiser | Head of School
Moises Eilemberg | President

June 30, 2022

Honorable Cynthia A. Bashant
United States District Judge

Dear Judge Bashant:

I am Rabbi Simcha Weiser. I respectfully submit this letter in support of Mr. Elliot Adler.

I am the Head of School at San Diego Hebrew Day, where Elliot and Ellen's three children (Ben, Anna, and Danielle) are enrolled. Elliot and Ellen are among our school's most active and supportive parents.

I have known Elliot for over 10 years, and it has been my pleasure to collaborate with him on school and community-related activities. Elliot is consistently among the first parents to volunteer and help at our school. He has generously contributed his time and financial resources for many years, and we could not do what we do without parents like him.

I recall a time when a class trip involving one of his children took place. Elliot's primary concern became whether all of the kids would be able to go. He told us that he would cover the costs for a child who could not afford the trip to ensure they would share in the experience. Elliot consistently acts with generosity and an interest in included all others.

Elliot is exceptionally community-minded. He regularly volunteers at community events such as fundraisers, local youth sports, and other activities. His interest in the general well-being of others in the community is palpable.

Elliot's children benefit greatly by him being very hands-on and supportive with them, notwithstanding his professional career. He is fully engaged, present, and invested in his children's learning and overall well-being.

Finally, Your Honor, in speaking with Elliot over the last several months, I can attest that he is utterly remorseful about the matter before the Court. He regrets his actions and how they are not in sync with his values and character. I believe the Court has no worry about Elliot re-offending; he has learned a tough life lesson. He is worthy of leniency, in my humble opinion.

Respectfully,

Rabbi Simcha Weiser

# EXHIBIT HH



4240 Gresham St.
San Diego, CA 92109

July 6, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Dear Judge Bashant:

My name is Rabbi Yossi Tiefenbrun. I am the Rabbi of Chabad of Pacific Beach. I have been a spiritual advisor and friend to Elliot Adler for over fourteen years. He is one of the most honorable men I have ever known, and I can attest to his excellent character.

Elliot was an original supporter and founding donor of our synagogue when we first opened. He impressed me immediately with his heart for the community. He has always been very thoughtful and is a bridge-builder who finds solutions to problems. Elliot would regularly offer help to the homeless in our area. He frequently served soup to the homeless community and encouraged others to do the same, and because of Elliot, this outreach became an integral part of our organizational mission.

Beyond helping to enhance our community, Elliot has also been a defender of it. Our organization is open to the public. We see all walks of life, including unfortunately the occasional person who seeks harm to us. Our first venue was in a strip mall, and a man once claimed to have slipped and fallen on the sidewalk near our building and sued us. We knew this was a completely false story, but it still had the potential to bankrupt us. Elliot jumped in right away and managed the case at no charge. Elliot exposed this as a frivolous case and got it properly dismissed.

Elliot has helped so many others in our community with pro bono legal services in the same way. He has helped bring estranged family members together after long time quarrels, and has dedicated much of his time to volunteering with Holocaust survivors. He is the first person I turn to for assistance with a community problem beyond my reach, and he is always willing to offer help. He never wants anything in return. In Pacific Beach, we see so much hardship, and few people are really there to lend a hand when it's needed the most. No one has filled these shoes more than Elliot.

Over the years, I have had the privilege of watching Elliot's family grow. He is a devoted husband and father. I recently attended his son's bar mitzvah. Elliot has taught his children the values of hard work, loving our neighbors, and having a generous spirit. I have also seen him use this experience to teach his children a valuable lesson about the importance of following the rules.

The mistakes Elliot has made resulting in his current legal problems are totally out of character. He is remorseful and does not try to hide what he did. He is very apologetic to those around him. He accepts total responsibility without blaming anyone else, which is a true sign of his character. However, I most honestly share that I believe the others involved in this scheme took advantage of Elliot's generosity. He should not have participated, but because I know Elliot well, I know he did not originate this.

This setback has not dampened Elliot's spirit to help others and his community. In many ways, it has strengthened his resolve. I understand the challenging role of a judge in administering justice. However, as a leader of my community, I believe justice could be served better by Elliot using his gifts and skills to further help society instead of removing him from the people he serves so well. Elliot is a really fine man, and I pray that you will consider all the alternatives in restoring him to his family and community as soon as possible.

Sincerely,

*Yossi Tiefenbrun*

Rabbi Yossi Tiefenbrun

Rabbi@chabadpb.org | ▆▆▆▆▆▆ | www.chabadpb.org

Be the light

# EXHIBIT II

*Yehiel & Bracha Navon*
*1652 Reed Avenue, #1*
*San Diego, CA 92109*

June 22, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Your Honor:

We first met Elliot Adler seven years ago. Our son and Elliot's son attended the same elementary school. The boys are now both in the 8th grade and are close friends. We have also become close friends with Elliot and his entire family. We offer our full support to them during this challenging time.

Elliot is a very down-to-earth person. He is kind and engages with those around him. He is very generous with himself and his time. He is always looking to help others. He is a devoted father and very involved with his children, their school, and all their activities. Elliot is the parent you can count on to be a great role model to other children. He has been exceptionally kind and nurturing to our son.

My (Yehiel) father passed away recently, and Elliot immediately reached out to me, not only with his condolences but with an offer to help with any needs. We had to fly overseas, and Elliot invited our son to stay with his family while we were gone. He treated us like family. We will forever be grateful to him during our time of need.

When Elliot shared his recent legal problems, he was remorseful and accepted responsibility for his mistakes. These events have humbled him, and we are confident he will be a better husband, father, and friend from this experience. Most people going through a similar trial would be depressed and withdrawn. Not Elliot. He has maintained a positive attitude. His generosity and caring spirit are, in many ways, stronger as he is even more invested in people. We are confident that Elliot will continue learning and growing from this experience.

We are saddened by the impact that this has had on his family. However, Elliot is transparent with his children, educating them about the consequences of poor decisions. They need their father to guide them through their most formative years. We pray that Elliot is granted leniency so he can return to his family and friends as quickly as justice allows.

Sincerely,

Yehiel Navon                Bracha Navon

# EXHIBIT JJ



Emerald Plaza • 402 West Broadway, Suite 960 • San Diego, CA 92101   Phone (619) ███ • Fax ███ • frantzlawgroup.com

May 10, 2022

**Via Certified Mail**
Attn: Hon. Cynthia A. Bashant
Edward J. Schwartz, United States Courthouse
221 West Broadway, Suite 4145
San Diego, CA 92101

    **Re: Elliot Adler**

Dear Honorable Bashant,

By way of introduction, I am the founder and CEO of Frantz Law Group, APLC. I have been practicing law for over 40 years and am AV rated by Martindale-Hubbel. I have been an Arbitrator and Special Master for the State Bar of California for the last 30 years. I am a Master of the William B. Enright Chapter of the American Inns of Court as well as a Fellow and Associate of the American Board of Trial Advocates.

I have known Mr. Elliot Adler for over ten years. Mr. Adler's office space was on the same floor as mine, and we often communicated as colleagues regarding various cases. Our relationship developed into a friendship/mentorship. Over the past decade, I have known Mr. Adler to be a respectful and attentive attorney who was collegial with colleagues and adversary counsel. He demonstrated civility, honesty, and compassion insofar as my observations of various client interactions.

I have come to know Mr. Adler's wife (Ellen Adler) who is a well-respected attorney and wonderful mother. Mr. Adler often spoke of his wife and three young children with adoration.

Mr. Adler has acknowledged that he made an egregious mistake in judgment by participating in the tax fraud scheme sponsored by Rabbi Goldstein. Mr. Adler informed me that this criminal offense has been catastrophic to his life and family. He is deeply ashamed and remorseful. He stated that he intends to make full restitution with respect to any and all criminal penalties. He further intends to participate in extensive psychological counseling and rehabilitation to assure that this misconduct is never repeated.

Based on my discussions with Mr. Adler, I am optimistic that he will not have a recurrence of this misconduct. I thank the Court for its indulgence in considering this letter, as well as Mr. Adler's individual circumstances, when determining his appropriate sentencing.

Sincerely,

James P. Frantz, Esq.
Frantz Law Group, APLC

# EXHIBIT KK

**Jay Gonzalez**                                                                June 1, 2022

12833 Baywind Point
San Diego, CA 92130

████████████

jayrobertgonzalez@yahoo.com

**The Honorable Cynthia A. Bashant**

Edward J. Schwartz United States Courthouse
221 West Broadway
Chambers Rm. #: Suite 4145
San Diego, CA 92101

Dear Honorable Judge Bashant,

I have known Elliot Adler for almost fifteen years and have gotten to know him very well through our many lengthy conversations about life, family and careers. We met over our mutual passion for playing basketball, but bonded over discussions of our children and community.

Part of the culture of the physical game of pick-up basketball is that we inevitably collide, get knocked down and disagree with each other on calls. Through my 30 years of playing, I have never met anyone more reasonable, fair and gracious on the court. Of the many players in our group, you wouldn't find anyone that would say anything other than that Elliot is one of the nicest people we play with.

We have an ongoing, fun discussion among several players that addresses who among us are the most liked and respected members of our basketball playing group. Keeping in mind, in the heat of the basketball battle, this is a group that might get angry with one another, has probably gotten a little too physical with each other, and sometimes even thrown around some unkind words. Elliot is the only person in our group that everyone agrees is the kindest, fairest and most decent among us.

Several years ago, I asked Elliot for some career and summer job advice for my college age daughter and he immediately offered her a job in his office for the summer. Moreover, he continued to have her work for almost two years during her college breaks. While that was very thoughtful and generous of him, he magnified that generosity by ensuring she was given great responsibility and experience while working at his firm. It was a great experience for her, and she holds Elliot in the highest regard for his kindness and trust in her.

Elliot has been a great friend to me and a generous mentor to my daughter, and I'm here to provide any support I can for him. Thank you for allowing me to submit this letter.

Sincerely,

Jay Gonzalez

# EXHIBIT LL

**Alan Peller**
**7508 Collins Ranch Terrace**
**San Diego, CA 91230**

June 17, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Dear Judge Bashant,

Elliot Adler and I have known each other for over fifteen years. We first met at our athletic club playing in a basketball league and have been friends ever since.  I am privileged to write this letter of support for him.

Elliot is great with people. He is congenial and an excellent listener. He is a devoted husband and father, always connected and committed to his family. He is a pleasure to be around. Elliot cares about others and is always willing to lend a hand.

Several years ago, Elliot ran for a local school board position. A successful attorney putting himself into the education world with all that requires reflects his passion for our community. Most of us are busy with our careers, family, and other activities, but Elliot is committed to the greater good. Although he did not win that election, it did not deter him from continuing his volunteer and other philanthropic activities.

The tragic events and trials we go through do not define us. We all make bad choices. I have told Elliot to separate this event from the honorable, loving, and caring man he has demonstrated throughout his life.  These events will not quench that positive spirit. I know this challenge is growing him spiritually and in many other ways that will benefit him and his family forever. If given the opportunity, I believe Elliot will be a tiger unleashed to use his talents to help a charitable or non-profit do amazing things. I pray that this court can extend the appropriate leniency to help him move forward.

Sincerely,

Alan Peller

# EXHIBIT MM

12424 Caminito Mira Del Mar
San Diego, CA 92130

June 24, 2022

Honorable Judge Cynthia Bashant
United States District Court
Southern District of California
Edward J. Schwartz Courthouse
221 West Broadway, Courtroom 4B
San Diego, California 92101

Your Honor:

My name is Kyle Stanley. I have been friends with Elliot Adler for over ten years. Thank you for the
opportunity to share some of my experiences with Elliot for your consideration.

Elliot is, first and foremost, a dedicated family man. He is invested in his children. Elliot's love for his
family is apparent in how they interact with each other and how he prioritizes them. Elliot is a very hard
worker, but not at the expense of his family.

Elliot cares about people. He represented numerous victims of the wildfires that devastated California.
Elliot showed tremendous compassion for these people who, in many cases, had lost everything. The
insurance companies were treating many of these people very poorly. Elliot helped them with personal
matters that had nothing to do with their home or property loss because he recognized the tragic situation.
He fought hard for them and was not just an attorney but a friend to each of them.

I am a realtor and have represented Elliot on numerous real estate transactions and the management of
several of his properties. Elliot treats his tenants with respect. Elliot authorizes the work to be done if they
have a problem or need something repaired, no questions asked. He lives the Golden Rule and puts the
needs of others ahead of his own.

Elliot and I play basketball in a regular group of approximately one hundred men. No single guy in this
group is more highly respected and has a more impeccable reputation than Elliot. When Elliot shared with
me about this legal matter, he was honest, direct, and very remorseful. He did not deflect the blame but
took responsibility for his mistakes. His misconduct is so out of character for a man who has done the
right thing ninety-nine out of one hundred times. Like many of his friends, I have so much respect for
Elliot and will continue to support him through this challenging season.

I know that Elliot will use the lessons from this experience in a positive way. He is smart and wants to
help people, so he will find a creative way to make a difference. I also know that he will use this
opportunity to help his children understand the consequences of bad decisions. I hope and pray that Elliot
can be granted appropriate leniency reflective of a man of high character who can significantly contribute
to our community.

Sincerely,

Kyle Stanley

# EXHIBIT NN



**FrantzLawGroup**
A Professional Law Corporation

Emerald Plaza ▪ 402 West Broadway, Suite 860 ▪ San Diego, CA 92101
Ph (619) ▮▮▮▮ ▪ Fax (619) ▮▮▮▮ ▪ frantzlawgroup.com

May 27, 2021

Attn: Hon. Cynthia A. Bashant
Edward J. Schwartz, United States Courthouse
221 West Broadway, Suite 145
San Diego, CA 92101

**Re Elliot Adler**

Dear Judge Bashant:

In 2014, as a new attorney to California, I met Elliot Adler. While I practiced law in New York as a law clerk and counsel to the executive branch, I was new to both civil litigation and California practice. Elliott worked on the same floor/building as the firm where I work, Frantz Law Group, APLC. Thus, I saw him on an almost a daily basis and got to know him very well.

Elliott Adler always had an open door to provide me with advice. This was very helpful to me as a new attorney to my firm. Elliott's advice was always well-reasoned and focused on a devotion and commitment to caring about and best serving the client's interests. The current situation surprises me, as Elliott's advice was also always ethical and about doing the right thing.

Elliott's support and friendship have been a positive influence on my legal career as I came to rely on him for his experience and wise counsel. Working on the same floor, I saw and heard how he put his client's first and put in the work to obtain a just result no matter how big or small the matter.

Elliott has shared with me his remorse for becoming involved in the situation at hand. He has further expressed his desire to make a positive impact in the future. I have also seen how this situation has been particularly devastating for his wife and his three children. Elliott (who has always focused on helping others) deeply regrets what this has done to his family.

In light of my conversations with Mr. Adler, I am optimistic that he will never engage in any similar misconduct again. It is my hope that this Court will consider the totality of his contribution to those in need and his commitment to rectifying his mistakes when determining an appropriate sentence.

Sincerely,

George Stiefel, Esq.
Frantz Law Group, APLC

San Diego | Los Angeles | San Francisco | Sacramento | Ventura | Santa Barbara
Santa Rosa | St. Helena | Fresno | Bakersfield | Riverside | Honolulu

# EXHIBIT OO

**KIERAN BETTS**
**7484 COLLINS RANCH CT**
**SAN DIEGO, CALIFORNIA 92130**

June 30, 2022

HONORABLE CYNTHIA A. BASHANT
UNITED STATES COURTHOUSE
221 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

Dear Judge Bashant:

My name is Kieran Betts, and I respectfully write in support of leniency for my friend Elliot Adler.

I have known Elliot to be a stand-up family guy, a straightforward and honest person of good character who has always acted with integrity in our personal and business interactions. I was surprised to learn of his current predicament with the Court and truly believe this is out of character.

I met Elliot 6 years ago. We first met when working out together at our gym. That evolved into playing basketball together regularly, and, organically, we became friends over time. Later, we also collaborated in business. Elliot is a lawyer. I am in the marketing business. One of the things I do is help lawyers with case acquisition. As a result, Elliot and I did a few marketing campaigns together. Thus, I have had the pleasure to know Elliot in both a personal and professional capacity.

I have always found Elliot to be reasonable and easy to work with. I remember one instance when Elliot showed grace towards me during a professional collaboration. I ran a case acquisition marketing campaign for him, and the results were not optimal. Other clients might have lashed out or sought to take advantage. Elliot acted professionally and was understanding of my challenges.

Your Honor, I believe Elliot is the last person one could imagine would get in a legal quagmire because he has always acted with honesty and integrity in our interactions. I hold him in high regard, believing that this situation has been a strong warning. I respectfully request that the Court grant him all available leniency.

Sincerely,

# EXHIBIT PP

**Andrew J. O'Brien**

API Proudctions, LLC
14 Wallace Dr
Delmar, NY 12054

August 4, 2022

Honorable Cynthia A. Bashant
United States Courthouse
Suite 4145
221 West Broadway
San Diego, CA 92101

Dear Your Honor:

I am writing in regards to Elliot Adler, who will be appearing before you for sentencing on August 19, 2022.  He was recently convicted of conspiracy to commit tax fraud.

I have known Elliot for over 20 years and was shocked to hear that he was involved in any type of illegal activity.  I have always known him to be an honest and generous individual, and I am certain that this offense was a lapse in otherwise sound judgement.  For what it's worth, Elliot has poured more good into this world than he has taken from it.  He has assisted myself, friends and family with legal services free of charge for years, he has been a loyal, reliable friend, and he is a respectable family man who is devoted to his wife and children.

Moreover, I believe the justice system owes Elliot a small debt of gratitude and perhaps some leniency for his benevolence within the system in years past.  Elliot has devoted countless hours of volunteer work to the Innocence Project.  Working alongside Barry Scheck, Elliot helped exonerate many wrongfully incarcerated individuals through DNA testing, ultimately giving them their freedom and a new life.  He worked tirelessly on this and had a passion to make what was wrong, right.  He is a man with a good heart and a conscience.

I'd ask that you consider the essence of what I have written here when you sentence him.  I don't want to see his family and life destroyed over a poor choice, even though our choices do determine our fate.  I plead you weigh all the good this man has done for the world when you decide his outcome.  Thank you.

Respectfully yours,

Andrew J. O'Brien

# EXHIBIT QQ

**Travis and Jaclyn Lash**
**3235 Fenelon St**
**San Diego, CA 92106**

June 1, 2022

<u>**Re: United States vs. Adler**</u>

Your Honor:

We are Elliot's sister and brother-in-law. We have been together since age fifteen, so both of us have had the pleasure of knowing Elliot as good as anyone for a long time.

Elliot is an incredibly giving human being who consistently puts the needs of others before his own. Whether aiding the community or sharing time with his family, he always makes the person he is with feel like the only thing that matters. He readily drops business and personal time when a friend or family member requires something urgent.

Elliot is also an amazing father, in many ways playing the role of both parents. He works during the day, comes home to do homework with the kids, cook and put the children to bed, as well as drive them around to events and activities. There is nothing he wouldn't do for his children and every spare moment is spent with them.  His three children rely on him tremendously and we know they would be left in a uniquely harmful condition if Elliot were to be absent from their care.

Elliot is also extremely generous with his time. He regularly doles out legal advice for free and stepped in to play a major role for Jaclyn a few years ago to address an awkward situation at work. Additionally, he helped Travis' mother when she got hit by a car, winning her a considerable settlement without asking for anything in return.

Religion has always played an outsized role in Elliot's life. His maternal grandfather was very involved in the community, and founder of a religious elementary and middle school, and Elliot has always followed his example when it comes to respect and trust toward religious leaders. Elliot also revered Rabbi Goldstein who had been his rabbi for most of his life. He felt so proud and grateful when Rabbi Goldstein announced to the community that Elliot was starting a law practice and recommended with such passion that people go to him for legal assistance. Elliot trusted and believed in Rabbi Goldstein to the point of doing something foolish and illegal. Please understand, we are not saying "the rabbi made him do it." Elliot accepts and understands that he did wrong, holding himself fully accountable. It's just that we, as outsiders looking in, can see how Elliot may have felt reluctant to disappoint someone to whom he felt so close.

Elliot is beside himself with grief for his terrible misjudgments. He has embarrassed himself and devastated his family. During this trying time of uncertainty, Elliot still remains more concerned about how his actions have affected others than the jeopardy he faces. We also see him trying to explain to others what a bad choice it is to break the law. That speak volumes about the person we know him to be.

Elliot has suffered greatly from this experience - emotionally, spiritually, professionally, financially, personally and well beyond. We humbly ask that you consider tempering judgment with mercy to enable Elliot to return to his family as quickly as possible.

Sincerely,

Travis and Jaclyn Lash

# EXHIBIT RR

June 16, 2022
Honorable Cynthia A. Bashant,
US District Court, Southern District

Re: Elliot Adler

Dear Judge Bashant:

Appearing before you in July will be Elliot Adler for sentencing in connection with the plea agreement, he entered due to a federal tax fraud prosecution. The reason I am writing to you is to supply input about the sentencing decision you will soon be making.

I have known Elliot for over 10 years both in a personal and professional relationship.

My son married Jaclyn Adler (his sister), so I have been able to interact, spend time and generally observe him in the many numerous family functions over the years. I am proud to have him as a member of the family. He is kind, generous, loving as a husband and especially as a father. It is particularly noteworthy the bond he has established with my grandchildren who have so warmly and emphatically taken to him. His kindness and loving nature that he shows with his own children is so present when my grandchildren see him. It is truly heartwarming that he extends himself despite the demands of his own 3 children.

Over the course of many years, we have engaged in discussions around politics, religion, world events, climate change and of course, the usual family matters. He is bright, articulate and has a true global view of the world. Although we may disagree on some things what is clear is that he is listening to my point of view and responds in a such a thoughtful manner. His actions in this tax matter are so out of character for him that I was shocked when he and I discussed this matter. He has taken responsibility and is very remorseful. I also know Rabbi Goldstein and it is easy to see how Elliot was taken in and manipulated by him. He was taken advantage of and manipulated by a master of the art.

On a professional level Elliot has represented my wife in a matter that he resolved quickly, professionally that was satisfactory for all. He is the gold standard for the law profession that all attorneys should aspire to. It saddens me the profession will be losing a star.

For all that is good, I humbly ask that you sentence him to the lowest amount of incarceration allowed. His family, friends and associates all need and rely on him. He is truly a terrific human being.

Respectfully submitted,

Steven Lash

# EXHIBIT SS

May 1, 2022

Re:   Elliot Adler

To the Honorable Cynthia A. Bashant,

My name is Sandra Dimenstein, and I am Elliot Adler's maternal grandmother.

As a devoted grandson, Elliot has always made himself available to his grandfather and me, particularly when we were in need of legal advice.

I have watched him spend years building his legal practice. We were so proud when he offered to mentor young family members, like our granddaughter, who has expressed an interest in practicing law and who in fact will be interning with the Justice Department this summer, following a summer spent last year interning at Elliot's firm.

My grandson is also a very dedicated husband and father, who makes time to bring his whole family to see my husband and me for holiday celebrations.  Just recently, I watched Elliot chase his very active three-year-old daughter around the dinner table after having spent the whole day watching all three children so his exhausted wife could get a much-needed break and get some alone time. My husband, who is 93 and in poor health, particularly takes great joy in seeing the hands-on father that Elliot has become, and I would ask that you consider the limited time we might have as a full-family unit when determining his sentence. While we are dismayed by the actions that Elliot has taken, we are proud of him for admitting his wrongdoing and feel confident that he would never repeat his devastating bad decisions.

Thank you so much for taking the time to read and consider my words.

Sincerely,

Sandra Dimenstein

Sandra Dimenstein

# EXHIBIT TT

Zachary Dimenstein
8445 La Jolla Scenic Drive N
La Jolla, CA 92037

Date: June 16, 2022

Subject: Reference letter for Elliot Adler

To the Honorable Cynthia A. Bashant,

I am sending this reference letter to request leniency for my nephew, Elliot Adler.  I have known Elliot all of his life and he has always been a giving person and very respectful, but my most amazing impression of Elliot is him as a loving father.

Elliot's oldest daughter, Anna, who just graduated from 5th grade, is in the same class as my own daughter, and they are best of friends. Elliot is always supporting Anna and when I see Anna give Elliot a kiss as he drops her off at school, it is obvious how much Anna loves her Dad.  His son Ben, who is 13 years old,  is on the same basketball team as my own son, and Elliot is always at the games to cheer for Ben and give him support. Elliot's youngest daughter, Danielle, is sweet and has tons of energy, and Elliot taking care of her gives his wife the rest she needs as a working mother.

Elliot is an active and loving father and each of his children rely on him heavily for emotional support. A lengthy separation from their Dad would have long term emotional damage on all of them.  I beg of you that you not punish Elliot's children as part of the sentencing decision.

Thank you so much for reading this letter.

Sincerely,

Zachary Dimenstein

# EXHIBIT UU

To the Honorable Cynthia A. Bashant,

My name is Ian White and Elliot Adler is my older cousin. When I had just transferred to NYU Stern as a junior, Elliot was a recent alum and enrolled in law school in New York City at the time. As I struggled to find my pathway in school, my cousin helped me focus my studies, ultimately helping me reach the position of business owner that I hold today.

The same has been true as I watched him become a parent. Elliot's oldest son, Ben, is less than a year older than my oldest, Brayden. As I worried about how I would adjust to new parenthood, I watched my cousin's sheer joy as a father—and his constant readiness to change diapers and give bottles—and knew I could handle it.

Today, both our families have expanded and I know that Elliot's children would suffer greatly from his absence, especially at these pivotal moments in their development. While my cousin has made mistakes, I am proud of him for owning them and promising to do better. I hope you can find it in your heart to think of Elliot's children's need for his presence when you're considering his sentencing.

Sincerely,

Ian White

# EXHIBIT VV

To the Honorable Cynthia A Bashant,

As Elliot Adler's aunt and uncle, we have spent years proudly watching his dedication to his family and community. Elliot is an essential part of our family always finding time to visit his parents and grandparents and spend time with his family. He is also a loving and supportive husband who has stood by his wife                                    , helping her feel special and important while ensuring that their children never experience disruptions to their daily lives during her more challenging moments. His support has been and will continue to be critical to his family unit's ability to survive and thrive.

In writing this letter, we hope to help you understand what a terrible loss it would be to our family to have him incarcerated for an extended period of time. He and his family have already suffered severely as a result of his regrettable decision. He has made his remorse and shame over his actions apparent to every member of our extended family, owning his responsibility and making it evident that he would never repeat such unconscionable actions. We sincerely hope that you will take his central role in the family and his remorse under consideration when determining his sentence.

Sincerely,

George and Joni White

# EXHIBIT WW

May 5, 22

To the Honorable Cynthia A. Bashant,

We are the uncle (Andrew-Elliot's mother is my sister) and aunt (Rosalind-through marriage) of Elliot Adler.  We have known Elliot for all of his life.  We know Elliot as a person who has clear values, and who follows these values in his personal life.

As with many families, there has been a family feud in Elliot's family.  When Elliot's parents wanted to marry, my parents were opposed to the union, due to bad feelings resulting from a business deal gone bad with Elliot's paternal grandparents.  This feud persists until this day, though to a lesser extent.

Elliot has determined that he, his wife and children, will not be part of this feud, and he has maintained strong ties with both his paternal grandparents (now deceased) and his maternal grandparents.  He spends the Passover Seder with his maternal grandparents every year.  He also visits his maternal grandparents on a consistent basis.   Elliot is a man who pursues peace, and does not allow himself to get embroiled in other people's altercations.

The fact that Elliot allowed Rabbi Goldstein to manipulate him, is totally out of character.  We ask that you take this into account when sentencing Elliot Adler.

Sincerely,

Andrew and Ros Dimenstein

Andrew and Rosalind Dimenstein

# EXHIBIT XX

## 7 charged in attack on son of N.J. gov

**By TOM FARMER**

Seven men are due in court next week in connection with charges they attacked the son of New Jersey Gov. Christie Todd Whitman and four of his Boston College roommates during a bottle-swinging brawl in a Brighton apartment.

The defendants, two of whom are also BC students, forced their way into a Wallingford Street apartment and attacked Taylor Whitman, 21, and his four roommates Feb. 5, after one of the defendants had been thrown out of a party there, authorities said.

"This points out that anybody can be a victim," said Pete McDonough, a spokesman for the New Jersey governor. "In this case, Taylor and his roommates were victims. We're confident the Commonwealth's courts will handle it in the appropriate manner."

Gov. Whitman is believed to be under consideration as a running mate for GOP presidential candidate George W. Bush.

John Hwang, 21, of Brighton, David Kong, 24, and Jae Chol Yi, 22, both of Allston, Calvin W. Leung, 25, of Malden, Philip K. Lee, 18, of Chestnut Hill, John Lim, 23, of Waltham, and Ariel J. Strauss, 25, of Brookline are charged with breaking and entering in the nighttime with intent to commit a felony and assault with a dangerous weapon. They are due in Brighton District Court May 16 for a motions hearing.

Authorities said the men broke windows and kicked in the door of the apartment about 2:45 a.m. before attacking the occupants with bottles after Hwang, also a junior at BC, had been asked to leave a party because he was intoxicated and obnoxious.

All but Hwang were arrested shortly after the incident.

Hwang's attorney, William O'Donnell, said Hwang and his roommates attacked Hwang during the party and claims he was turned away the next day when he went to the Brighton police station to file a complaint.

Hwang subsequently filed his own cross complaints against the roommates in the Brighton court but a clerk magistrate decided last month there was not enough evidence to bring charges, authorities said.

When O'Donnell appealed for a hearing before Judge Peter Anderson, the judge denied the request May 5 after prosecutors said they would dismiss assault charges if they were issued against Whitman and his roommates, O'Donnell said.

"The judge has the discretion to reject a hearing, but his decision was clearly based on the assistant district attorney interjecting himself by saying even if the judge found basis to bring charges, that the (Suffolk County) district attorney's office was going to dismiss them anyway."

# Innocent man free after 'long 10 years'

## Rape conviction cleared with DNA evidence

**By DAVE WEDGE**

A Boston man wrongly convicted 10 years ago of raping a 19-year-old Emerson College student was set free yesterday, making him just the second inmate in state history to be cleared by DNA evidence.

"I praise God. Without Him, I would not have survived these last 10 years," 33-year-old Neil Miller said, smiling and hugging his family outside a Suffolk County Superior courtroom, moments after his release. "I've lost a lot but I don't hate anybody. I don't hold any grudges."

Miller was sentenced to 10-25 years in state prison in December 1990 for the Aug. 24, 1989 rape of the Boylston Street woman, despite blood evidence that ruled him out as the attacker. The conviction was based on the victim's identification of Miller from two separate photo arrays.

He lost a 1993 appeal and was denied parole three years ago because he proclaimed his innocence and refused to enter treatment for sexual deviance.

"Hopefully, I can move on and the victim can move on," he said, adding that he would be staying with family in Boston while looking for a job.

"We always knew in our hearts he was innocent," his sister, Demaris Miller, said tearfully.

"It's been a long 10 years and he can't get them back, but we're not looking back. We're going to make the most of now," added his cousin, Ginnada Hayes-John.

Miller, who is single and has two children, is just the second Massachusetts person freed from jail by DNA evidence. Nationwide, 65 people have been cleared by DNA testing, eight of whom were on death row.

Miller was scheduled to appear in Ayer District Court today where he was expected to be given credit for time served for a nine month sentence for assaulting a corrections officer at MCI-Shirley in 1992. He spent 22 months in solitary confinement for the assault.

"He has served that nine-month sentence over and over and over," his attorney, Nona Walker, said. "If he hadn't been wrongly convicted of this crime, he wouldn't have ever been in a position to assault a corrections officer."

Suffolk County Assistant District Attorney Tracy-Lee Lyons said she spoke with the victim and told her Miller had been cleared by DNA tests. A semen stain found on the woman's bed sheet and in a rape test kit did not match Miller's DNA.

"She expressed a deep concern for him and his family and wished him the best," Lyons said of the victim.

Miller's case was championed by celebrity lawyer Barry Sheck's Innocence Project, a network of lawyers and students who work to exonerate wrongly convicted people through DNA testing.

Innocence Project attorney Peter J. Neufeld of New York, said Miller's case is an example of institutionalized racism that plagues the court system.

According to the Innocence Project, 35 percent of blacks exonerated by DNA were misidentified by a white victim. Miller is black while the victim is white.

"The more important question here is what went wrong with the system to convict Mr. Miller in the first place. Unfortunately, race plays a role," Neufeld said.

Suffolk County District Attorney's office spokesman Jim Borghesani said prosecutors worked closely with the Innocence Project on Miller's case because "we have no interest in seeing an innocent person sit in jail."

"We know the power of DNA tests," Miller said. "They have the power to convict and to exonerate. We can't trumpet one power over the other



STAFF PHOTOS BY MATTHEW WEST

**FREE AT LAST:** Neil Miller gives Elliot Adler, a law student who helped tackle his case, a hug outside the Suffolk County Courthouse where he was freed from prison. Adler works with attorney Barry Sheck's Innocence Project, a group which works to free inmates who were convicted before DNA testing was available. Below, Miller holds his niece while talking to his sister, Lauri Miller, after his release yesterday.



# EXHIBIT YY



# *Certificate of Appreciation*

**The Superior Court of the State of California
County of San Diego**

**Gratefully Recognizes**

## E. Elliot Adler

**For Dedication and Commitment as a
Temporary Judge in 2014**

*Awarded this 20th day of November 2014*

*K. Michael Kirkman*

**K. MICHAEL KIRKMAN, Supervising Judge
San Diego Superior Court, North County Division**

EXHIBIT ZZ

# E. Elliot Adler



501 W Broadway, Ste 730
San Diego, CA 92101-3556
(917) 309-7415
elliotadler@gmail.com

April 13, 2022

Office of Chief Trial Counsel, Intake
State Bar of California
845 South Figueroa Street
Los Angeles, CA 90017
Fax: 213-765-1168
Email: william.todd@calbar.ca.gov

Re: California Bar License No. 229030

Dear Sir or Madam:

Attached to this correspondence is a copy of the Criminal Reporting Form signed by me and disclosing that as of April 13, 2022, I have been convicted by guilty plea of a felony violation of Title 18 U.S.C. §371. Also attached is a copy of the Information charging me, as well as my plea agreement and financial addendum relating to that Information.

Please be advised that on April 1, 2022, the date I signed the plea agreement, I resigned my position at the Adler Law Group and have entirely ceased the practice of law. I voluntarily agree to the interim suspension of my law license until formal proceedings are initiated by the State Bar.

My attorneys in the criminal case are Patrick Q. Hall and John C. Ellis. If you have any questions regarding the case, please do not hesitate to contact them.

Respectfully,

E. Elliot Adler

Encls.



# ATTORNEY'S REPORT OF CRIMINAL PROCEEDINGS
## *(Bus. & Prof. Code, § 6068, subd. (o)(4) & (5))*



# The State Bar
## *of California*

| | |
|---|---|
| **ATTORNEY'S REPORT OF CRIMINAL PROCEEDINGS**<br><br>*(Bus. & Prof. Code, § 6068, subd. (o)(4) & (5))* | Send to:<br><br>Office of Chief Trial<br>Counsel, Intake<br>845 S. Figueroa Street<br>Los Angeles, CA 90017<br>Fax: 213-765-1168 |

I am reporting to the State Bar of the following:

**■ The bringing of an indictment or information charging a felony against me.**
*Attach a copy of the charging document or provide the following information:*

Date that charges were filed: April 13, 2022       Court Case #: 22-CR-   -BAS

Court name/address:       U.S. District Court Southern District of CA, 221 West Broadway, San Diego, CA 92101

Charge(s):       Title 18 U.S.C section 371

**■ A verdict of guilty against me or plea of guilty or no contest to felony charge(s).**
*Attach a copy of the charging document or provide the following information:*

Date that charges were filed: April 13, 2022       Court Case #: 22-CR-   -BAS

Court name/address:       U.S. District Court Southern District of CA, 221 West Broadway, San Diego, CA 92101

Charge(s):       Title 18 U.S.C section 371

**☐ A verdict of guilty against me or my plea of guilty or no contest to misdemeanor charge(s) committed in the course of the practice of law, or in a manner in which a client of the attorney was the victim, or a necessary element of which, as determined by the statutory or common law definition of the misdemeanor, involves improper conduct of an attorney, including dishonesty or other moral turpitude, or an attempt or a conspiracy or solicitation of another to commit a misdemeanor of that type.**

*Attach a copy of the charging document or provide the following information:*

Date of verdict/plea: April 13, 2022       Court case no.: 22-CR

Court name/address:       U.S. District Court Southern District of CA, 221 West Broadway, San Diego, CA 92101

Charge(s):       Title 18 U.S.C. section 371

**SUBMITTED BY:**

Signature: *[signature]*       Dated: 04/13/22

Print Name:   E. Elliot Adler

Bar Number:   229030       Telephone Number:   619-531-8700

Address:   501 W Broadway, Ste 730, San Diego, CA 92101-3556

*(Rev. 8/30/19)*

# INFORMATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22CR_____ |
| v. | INFORMATION |
| ELLIOT ADLER, | 18 U.S.C. § 371 – Conspiracy to Defraud the United States and File False Tax Returns |
| Defendant. | |

17     The United States Attorney charges, at all times material:

18     1.     Beginning at least as early as 2010, and continuing through October 2018, within the Southern District of California and elsewhere, Defendant ELLIOT ADLER knowingly and intentionally conspired and agreed with Yisroel Goldstein (charged elsewhere) and others to: (1) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes; and (2) file false tax returns in violation of 26 U.S.C. § 7206(1).

25     2.     To further the conspiracy, ADLER and his co-conspirators used the following manner and means, among others:

27          a.     ADLER would give money to Goldstein, disguised as charitable or religious donations to the Chabad.  In return, Goldstein would generate

a receipt on Chabad letterhead falsely acknowledging ADLER's "generous tax deductible donation."

b. Rather than using the purported donations for charitable purposes, Goldstein would secretly funnel approximately 90% of the funds back to ADLER, keeping approximately 10% of the money as his fee.  Thus, 100% of the purported donation was diverted and none of the funds were actually given to the Chabad as a charitable donation.

c. In order to conceal and hide their conduct, ADLER and Goldstein would communicate using coded language.  For example, Goldstein would refer to cash as "challah" and his source of cash as "the baker," or Goldstein would invite co-conspirators to "wrap tefillin" when he proposed meeting to receive checks or deliver cash.

d. ADLER would then falsely claim to his tax preparer that 100% of his payments to the Chabad were tax-deductible charitable contributions, without disclosing that Goldstein had secretly returned most of the money to him.  ADLER's tax preparer would then include the fraudulent donations to the Chabad in ADLER's itemized deductions, thereby reducing ADLER's personal income tax liabilities.

e. Defendant ADLER would then sign and cause a false tax return to be filed with the IRS in which he falsely claimed that he had made the fraudulent charitable donations.  In doing so, ADLER fraudulently reduced his tax liability by more than $500,00 for tax years 2011 through 2017.

3.     In furtherance of the conspiracy, ADLER, Goldstein, and others took numerous overt acts, including the following:

a. On around October 19, 2015, Goldstein sent a text message to ADLER alerting him that he had cash available: "I just got a call from the Baker he may be in this Friday do you still need Chalah?"

2

b.  On around December 4, 2015, Goldstein sent a text message to ADLER which stated: "Eliot how are you the Baker needs to know if you need any Chala before the year end[.]"

c.  On or about Thursday, January 7, 2016, at approximately 7:55 am, Goldstein texted ADLER again: "Good morning I got the challah[.] What time?"

d.  That same day, January 7, 2016, at approximately 8:00 am, ADLER replied to Goldstein by text: "Monday morning 8am at shul or today before 12pm if you can come to my office."  Goldstein responded: "Monday @ 8 is fine[.]"  Adler confirmed: "See you then."

e.  On about Monday, January 11, 2016, Goldstein deposited a check for $30,000 from ADLER, payable to Chabad of Poway, which was dated December 17, 2015 and included the memo: "Charitable Donation."

f.  On about December 23, 2016, Goldstein deposited a check for $44,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation."

g.  On about December 25, 2017, ADLER texted Goldstein asking to meet with him.

h.  On about December 29, 2017, Goldstein deposited two sequentially-numbered checks from ADLER, one for $180,000 dated December 25, 2017, and one for $980,000 dated December 29, 2017, each payable to the Chabad of Poway and each with the memo: "Donation."  Goldstein provided ADLER with a donation receipt letter for each of these checks, memorializing ADLER's "generous tax-deductible donation."

i.  On about Friday January 5, 2018, Goldstein sent ADLER a coded text message: "Let me know if you're around sometime this week that we can get together and wrap teffilin?"  ADLER proposed: "How about Monday?"  Goldstein agreed.

j.     On around January 10, 2018, Goldstein wired approximately $1,000,000 to a wholesale and retail jeweler to purchase 246 Suisse Fortuna 1 oz. rectangular gold ingots, 246 Canadian Maple Leaf 1 oz. gold coins, and 246 American Eagle 1 oz. gold coins.

k.     On about January 16, 2018, Goldstein received the gold coins and placed them in his safe deposit box at Wells Fargo Bank for safekeeping.

l.     On about January 17, 2018, Goldstein texted ADLER a coded message: "When can you come [i]n for a teffilin wrap?  I'm ready for you."

m.    On around January 18, 2018, Goldstein delivered the gold to ADLER.

n.     On about February 1, 2018, Goldstein deposited another check for $18,000 from ADLER, payable to Chabad of Poway, which was dated December 30, 2017.

o.     In or around September 2018, ADLER provided his tax preparer with a summary of his "Charitable Contributions" in 2017 in which he claimed that he donated to Chabad of Poway: (i) $180,000 on December 25, 2017; (ii) $980,000 on December 29, 2017; and (iii) $18,000 on December 30, 2017.  ADLER included these purported donations among the itemized deductions included on his tax return to reduce his taxable income for 2017.  ADLER did not reveal to his tax preparer that he had secretly received approximately $1 million in gold from Goldstein after making his purported donations.

p.     On about October 3, 2018, ADLER signed an IRS e-file signature authorization form, declaring that he had examined his tax return and that it was accurate, and permitting his tax return preparer to file it electronically.  On about October 8, 2018, ADLER's electronic Individual Income Tax Return Form 1040 for the 2017 tax year was e-filed.  In this return, Defendant ADLER falsely claimed that he had

4

donated approximately $1,187,000 to charity, and in doing so, fraudulently reduced his 2017 tax liability by approximately $447,000.

q.   On about October 18, 2018, Goldstein told ADLER that he was under investigation by the IRS and had been the subject of an undercover operation relating to tax evasion. He asked for ADLER's help to prove, falsely, to the IRS that Goldstein—and not ADLER—was in possession of the gold coins purchased with ADLER's purported donation.

r.   At around just after midnight, in the early hours of October 19, 2018, ADLER arrived at Goldstein's home and returned the gold coins.

All in violation of Title 18, United States Code, Section 371.

RANDY S. GROSSMAN
Acting United States Attorney

DATED: 4/6/2022

VALERIE H. CHU
Assistant U.S. Attorney

DATED: 4/6/22

MICHELLE WASSERMAN
Assistant U.S. Attorney

5

# PLEA AGREEMENT AND FINANCIAL ADDENDUM

RANDY S. GROSSMAN
Acting United States Attorney
VALERIE H. CHU (Ca. Bar No. 241709)
MICHELLE WASSERMAN (Ca. Bar No. 254686)
Assistant United States Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:  (619) 546-6750
Email:       Valerie.chu@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22CR_____ |
| v. | |
| ELLIOT ADLER, | **PLEA AGREEMENT** |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, Assistant United States Attorney, and Valerie H. Chu and Michelle Wasserman, Assistant U.S. Attorneys, and Defendant ELLIOT ADLER, with the advice and consent of Pat Hall and John Ellis, counsel for Defendant, as follows:

### I

### THE PLEA

Defendant agrees to waive Indictment and plead guilty to an Information charging Defendant with one count of conspiracy to defraud the United States and file false tax returns, in violation of 18 U.S.C. § 371.

Defendant further agrees that before sentencing, Defendant will cooperate with the Internal Revenue Service ("IRS") in the computation and collection of any income tax due and owing, including penalties and interest, for tax years 2011 through 2017.  Defendant

agrees that all information in the possession of IRS-Criminal Investigation agents may be provided to civil revenue officers and agents for the purpose of computing taxes, penalties and interest.

In exchange, the United States agrees not to bring any additional criminal charges against Defendant for conduct outlined in the "Factual Basis" section of this plea agreement, unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. Defendant expressly waives all constitutional and statutory defenses to the initiation of any charges based on conduct outlined in the "Factual Basis" that the United States did not bring pursuant to this plea agreement.

In addition, the attached Financial Addendum governs the financial penalties governing to this case.

## II

## NATURE OF THE OFFENSE

### A.   ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1.  There was an agreement between two or more persons to (a) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment, and collection of revenue, and (b) file false tax returns in violation of 26 U.S.C. § 7206(1);

2.  The defendant became a member of the conspiracy knowing of its objects and intending to help accomplish them; and

3.  At least one member of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Filing a false tax return in violation of 26 U.S.C. § 7206(1) has the following elements:

1.  The defendant made and subscribed to a federal income tax return that the defendant knew contained false information as to a material matter;

Def. Initials _EA_
22 CR_____

this is, knowing that it had a natural tendency to influence, or was capable of influencing, the decisions or actions of the IRS;

2.   The return contained a written declaration that it was being signed subject to the penalties of perjury, and;

3.   In filing the false tax return, the defendant acted willfully and intentionally, that is, with the specific intent to violate the law.

B.   <u>ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS</u>

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea.  In addition, Defendant admits that the following facts are true and undisputed:

1.   Defendant ELLIOT ADLER is an attorney licensed to practice law in the State of California.  Since at least 2006, ADLER was the founding partner of a boutique law firm.  ADLER has generated significant income recovering millions of dollars on behalf of plaintiffs.

2.   Yisroel Goldstein (charged elsewhere) was the director of Chabad of Poway ("the Chabad"), a religious congregation and community organization located in Poway, California.  Goldstein established Chabad of Poway in 1986 and served as the director and head rabbi of the organization until 2018.

3.   Public charities organized and operated for exclusively religious, charitable, education, or other approved purposes, are exempt from federal taxation pursuant to Title 26, United States Code, Section 501(c)(3).  To promote charitable giving and advance the work of approved public charities, the Internal Revenue Service ("IRS") allows individuals who donate money to public charities to reduce their own

Def. Initials  EA

22 CR_____

taxable incomes by deducting the amounts of their donations given, and thus to reduce their personal income taxes.

4. Chabad of Poway is a public charity registered with the IRS as a tax-exempt organization. Individuals who donate money to the Chabad may therefore reduce their own taxable incomes by deducting the amounts of their donations given, and thus reduce their personal income taxes.

5. To claim a tax deduction of $250 or more, a donor to a tax-exempt public charity must obtain and keep a written acknowledgment or receipt from the charity to document the contribution. The Chabad therefore generated donation receipt letters, typically signed by Goldstein, documenting the amount of a donor's contribution and specifically noting that the donation is "tax deductible."

6. Beginning at least as early as 2010, and continuing through October 2018, within the Southern District of California and elsewhere, Defendant ELLIOT ADLER knowingly and intentionally conspired and agreed with Yisroel Goldstein and others to: (1) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes; and (2) file false tax returns in violation of 26 U.S.C. § 7206(1).

7. To further the conspiracy, ADLER and his co-conspirators used the following manner and means, among others:

a. ADLER would give money to Goldstein, disguised as charitable or religious donations to the Chabad. In return, Goldstein would generate a receipt on Chabad letterhead falsely acknowledging ADLER's "generous tax deductible donation."

Plea Agreement

4

Def. Initials _EA_
22CR_____

b. Rather than using the purported donations for charitable purposes, Goldstein would secretly funnel approximately 90% of the funds back to ADLER, keeping approximately 10% of the money as his fee.  Thus, 100% of the purported donation was diverted and none of the funds were actually given to the Chabad as a charitable donation.

c. In order to conceal and hide their conduct, ADLER and Goldstein would communicate using coded language.  For example, Goldstein would refer to cash as "challah" and his source of cash as "the baker," or Goldstein would invite co-conspirators to "wrap tefillin" when he proposed meeting to receive checks or deliver cash.

d. ADLER would then falsely claim to his tax preparer that 100% of his payments to the Chabad were tax-deductible charitable contributions, without disclosing that Goldstein had secretly returned most of the money to him.  ADLER's tax preparer would then include the fraudulent donations to the Chabad in ADLER's itemized deductions, thereby reducing ADLER's personal income tax liabilities.

e. Defendant ADLER would then sign and cause a false tax return to be filed with the IRS in which he falsely claimed that he had made the fraudulent charitable donations.  In doing so, ADLER fraudulently reduced his tax liability by approximately $500,000 for tax years 2011 through 2017.

8.    In furtherance of the conspiracy, ADLER, Goldstein, and others took numerous overt acts, including the following:

a. On about December 6, 2012, Goldstein deposited a check for $20,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation."

Def. Initials EA

22 CR_____

b. On about December 21, 2012, Goldstein deposited a check for $20,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation (Holidays)."

c. On about October 15, 2013, Goldstein deposited a check for $22,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation."

d. On about December 31, 2014, Goldstein deposited a check for $10,000 from ADLER, payable to Chabad of Poway, which included the memo: "Charitable Donation."

e. On around October 19, 2015, Goldstein sent a text message to ADLER alerting him that he had cash available: "I just got a call from the Baker he may be in this Friday do you still need Chalah?"

f. On around December 4, 2015, Goldstein sent a text message to ADLER which stated: "Eliot how are you the Baker needs to know if you need any Chala before the year end[.]"

g. On or about Thursday, January 7, 2016, at approximately 7:55 am, Goldstein texted ADLER again: "Good morning I got the challah[.] What time?"

h. That same day, January 7, 2016, at approximately 8:00 am, ADLER replied to Goldstein by text: "Monday morning 8am at shul or today before 12pm if you can come to my office." Goldstein responded: "Monday @ 8 is fine[.]" Adler confirmed: "See you then."

i. On about Monday, January 11, 2016, Goldstein deposited a check for $30,000 from ADLER, payable to Chabad of Poway, which was dated December 17, 2015 and included the memo: "Charitable Donation."

Def. Initials _EA_
22 CR_____

j. On about December 23, 2016, Goldstein deposited a check for $44,000 from ADLER, payable to Chabad of Poway, which included the memo: "Donation."

k. On about December 25, 2017, ADLER texted Goldstein asking to meet with him.

l. On about December 29, 2017, Goldstein deposited two sequentially-numbered checks from ADLER, one for $180,000 dated December 25, 2017, and one for $980,000 dated December 29, 2017, each payable to the Chabad of Poway and each with the memo: "Donation." Goldstein provided ADLER with a donation receipt letter for each of these checks, memorializing ADLER's "generous tax-deductible donation."

m. On about Friday January 5, 2018, Goldstein sent ADLER a coded text message: "Let me know if you're around sometime this week that we can get together and wrap teffilin?" ADLER proposed: "How about Monday?" Goldstein agreed.

n. On around January 10, 2018, Goldstein wired approximately $1,000,000 to a wholesale and retail jeweler to purchase 246 Suisse Fortuna 1 oz. rectangular gold ingots, 246 Canadian Maple Leaf 1 oz. gold coins, and 246 American Eagle 1 oz. gold coins.

o. On about January 16, 2018, Goldstein received the gold coins and placed them in his safe deposit box at Wells Fargo Bank for safekeeping.

p. On about January 17, 2018, Goldstein texted ADLER a coded message: "When can you come [i]n for a teffilin wrap? I'm ready for you."

q. On around January 18, 2018, Goldstein deliver the gold to ADLER.

r.   On about February 1, 2018, Goldstein deposited another check for $18,000 from ADLER, payable to Chabad of Poway, which was dated December 30, 2017.

s.   In or around September 2018, ADLER provided his tax preparer with a summary of his "Charitable Contributions" in 2017 in which he claimed that he donated to Chabad of Poway: (i) $180,000 on December 25, 2017; (ii) $980,000 on December 29, 2017; and (iii) $18,000 on December 30, 2017.   ADLER included these purported donations among the itemized deductions included on his tax return to reduce his taxable income for 2017.   ADLER did not reveal to his tax preparer that he had secretly received approximately $1 million in gold from Goldstein after making his purported donations.

t.   On about October 3, 2018, ADLER signed an IRS e-file signature authorization form, declaring that he had examined his tax return and that it was accurate, and permitting his tax return preparer to file it electronically.   On about October 8, 2018, ADLER's electronic Individual Income Tax Return Form 1040 for the 2017 tax year was e-filed.   In this return, Defendant ADLER falsely claimed that he had donated approximately $1,178,000 to charity, and in doing so, fraudulently reduced his 2017 tax liability by approximately $447,000.

u.   On about October 18, 2018, Goldstein told ADLER that he was under investigation by the IRS and had been the subject of an undercover operation relating to tax evasion.   He asked for ADLER's help to prove, falsely, to the IRS that Goldstein—and not ADLER—was in possession of the gold coins purchased with ADLER's purported donation.

Def. Initials EA

22 CR_____

v.  At around just after midnight, in the early hours of October 19, 2018, ADLER arrived at Goldstein's home and returned the gold coins.

## III

## PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

A.    a maximum 5 years in prison;

B.    a maximum $250,000 fine or twice the gross gain derived or loss resulting from the offense, whichever is greater;

C.    a mandatory special assessment of $100;

D.    a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

E.    the costs of prosecution; and

F.    pursuant to Defendant's agreement, an order from the court pursuant to Title 18, United States Code, Section 3663, that Defendant make restitution to the victims of the offense of conviction, or the estates of the victims.

Defendant further understands that by pleading guilty, Defendant may become ineligible for certain federal benefits.

## IV

## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.    Continue to plead not guilty and require the United States to prove the elements of the crime beyond a reasonable doubt;

B.    A speedy and public trial by jury;

C.    The assistance of counsel at all stages;

D.    Confront and cross-examine adverse witnesses;

Def. Initials EA

22 CR_____

E.  Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F.  Not testify or have any adverse inferences drawn from the failure to testify.

## V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

The United States will provide Defendant any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case, and will continue to provide such information to Defendant.

If this case proceeded to trial, the United States would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

Def. Initials _CA_

22 CR_____

B.  No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.  No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.  Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the United States have an opportunity to review and challenge the presentence report. Defendant agrees to request that a presentence report be prepared. Nothing in this plea agreement limits the United States' duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

Plea Agreement                                      11                          Def. Initials _EA_

22 CR_____

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The United States has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the United States at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.   SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1.   Base Offense Level [§2T1.1(a)(1); §2T4.1(G)] ...........................18

2.   Acceptance of Responsibility [§3E1.1] ........................................ -3

3.   Total offense level.........................................................................15

B.   ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the United States will not be obligated to recommend an adjustment for acceptance of responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility, including, but not limited to, the following:

1.   Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2.     Falsely denies prior criminal conduct or convictions;

3.     Is untruthful with the United States, the Court or probation officer; or

4.     Breaches this plea agreement in any way.

C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The United States may oppose any downward adjustments, departures, or variances not set forth in Paragraph A above.

D.    NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have no agreement as to Defendant's Criminal History Category.

E.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG §1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.    PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The United States will recommend that Defendant be sentenced to the low end of the advisory guideline range as calculated by the United States pursuant to this agreement.

G.    PROBATION AND SUPERVISED RELEASE

If the Court imposes a term of probation or supervised release, Defendant will not seek to reduce or terminate early the term of probation or supervised release until Defendant has served at least 2/3 of the term and has fully paid and satisfied any special assessments, fine, and restitution judgment.

## XI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any lawful restitution order. The only exceptions are 1) Defendant may appeal a custodial sentence above the high end of the guideline range

recommended by the United States at sentencing, and 2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant believes the United States' recommendations at sentencing are not in accord with this plea agreement, Defendant will object at the time of sentencing; otherwise the objection will be deemed waived.  If Defendant appeals, the United States may support on appeal the sentence or restitution order actually imposed.

**XII**

**<u>BREACH OF THE PLEA AGREEMENT</u>**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the United States has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea

1   agreement. For example, the United States may proceed to sentencing but recommend a
2   different sentence than what it agreed to recommend above.  Or the United States may
3   pursue any charges including those that were dismissed, promised to be dismissed, or not
4   filed as a result of this agreement (Defendant agrees that any statute of limitations relating
5   to such charges is tolled indefinitely as of the date all parties have signed this agreement;
6   Defendant also waives any double jeopardy defense to such charges). In addition, the United
7   States may move to set aside Defendant's guilty plea. Defendant may not withdraw the
8   guilty plea based on the United States' pursuit of remedies for Defendant's breach.

9       Additionally, if Defendant breaches this plea agreement: (i) any statements made by
10  Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a
11  District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii)
12  any evidence derived from such statements, are admissible against Defendant in any
13  prosecution of, or any action against, Defendant. This includes the prosecution of the
14  charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution
15  agreed to dismiss or not file as part of this agreement, but later pursues because of a breach
16  by the Defendant. Defendant knowingly, voluntarily, and intelligently waives any argument
17  that the statements and any evidence derived from the statements should be suppressed,
18  cannot be used by the United States, or are inadmissible under the United States
19  Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the
20  Federal Rules of Criminal Procedure, and any other federal rule.

21                                    **XIII**

22              **CONTENTS AND MODIFICATION OF AGREEMENT**

23      This plea agreement embodies the entire agreement between the parties and
24  supersedes any other agreement, written or oral. No modification of this plea agreement
25  shall be effective unless in writing signed by all parties.

26

27

28

Def. Initials _____
22 CR_____

## XIV

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
Acting United States Attorney

DATED: 4/6/2022

VALERIE H. CHU
Assistant U.S. Attorney

DATED:   4/6/2022

MICHELLE WASSERMAN
Assistant U.S. Attorney

DATED: 4-1-22

PAT HALL
Defense Counsel

DATED: 4/4/2022

JOHN ELLIS
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

DATED:  April 1, 2022

ELLIOT ADLER
Defendant

Plea Agreement

16

Def. Initials EA

22 CR_____

**United States v. ELLIOT ADLER, Case No. _____**

**FINANCIAL ADDENDUM**

1.      Defendant's conviction will include financial penalties such as a forfeiture, fine, and restitution.   This Financial Addendum is incorporated into and part of Defendant's plea agreement, and the additional terms and warnings below apply.

**A.     Forfeiture**

i.      As part of Defendant's guilty plea to the Information, Defendant agrees to forfeit to the United States and waive any claims to all properties seized in connection with the case, including:

-   246 Suisse Fortuna 1 oz. rectangular gold ingots;
-   246 Canadian Maple Leaf 1 oz. gold coins; and
-   246 American Eagle 1 oz. gold coins.

Defendant admits that he owns the property described above, and consents and agrees to the immediate forfeiture of all such properties upon entry of the guilty plea.

ii.      Defendant consents to the immediate entry of an order of forfeiture and agrees that upon entry of the preliminary order of forfeiture, such order shall be final as to Defendant. Defendant agrees by signing the plea agreement and this addendum that he is immediately withdrawing any and all claims in pending administrative and civil forfeiture proceedings to properties seized in connection with this case and does hereby withdraw his third party petition in *United States v. Goldstein*, 20CR1916-BAS.   Defendant agrees to execute all documents requested by the Government to facilitate or complete the forfeiture process. Defendant further agrees not to contest, or to assist any other person or entity in contesting, the forfeiture of property seized in connection with this case.   Contesting or assisting others in contesting the forfeiture shall constitute a material breach of the plea agreement, relieving the Government of all its obligations under the agreement including but not limited to its agreement to recommend an adjustment for Acceptance of Responsibility.   If the Court imposes an additional forfeiture money judgment, Defendant waives

Def. Initials  EA

____CR_____

all demand for payment of the forfeiture judgment and waives all notices for substitution of property to collect the full amount of the judgment.

       iii.    Defendant consents and agrees to the entry of orders of forfeiture for such property on any statutory basis and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Rule 11(b)(1)(J), at the time the Court accepts the guilty plea(s).  If the United States files a civil forfeiture case, Defendant : waives service of the complaint; waives all notices of forfeiture and motions in connection with that case; and agrees this addendum shall also be construed to also be a consent to entry of judgment as to any and all interest he may have in that case.

       iv.    Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States and to testify truthfully in any judicial forfeiture proceeding.

       v.    Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

       vi.    The parties further agree that the U.S. Attorney's office will seek restoration of a portion of the forfeited properties to be applied to restitution to be ordered in this case.  Defendant understands and agrees that it is in the ***sole discretion*** of the Attorney

2

Def. Initials __EA__

____CR_____

General whether to grant a request for restoration.  Defendant further agrees and under-stands that he is liable for the full amount of restitution ordered, regardless of whether restoration is granted or denied.

**B.    Restitution**

i.      Defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $1,049,573.67, pursuant to 18 U.S.C. § 3663(a)(3).   Defendant understands and agrees that this figure includes interest under 26 U.S.C. § 6601, which continues to accrue until the IRS receives full payment under Title 26.  Defendant agrees that the total amount of restitution reflected below results from Defendant's fraudulent conduct:

| Tax Year(s) | Amount to be Credited to Tax | Fraud Penalty Under Title 26 U.S.C. § 6663 | Interest, estimated and computed to 10/31/2021 Under Title 26 U.S.C. § 6601 | **Total** |
|---|---|---|---|---|
| 2011 | $5,200.00 | $3,900.00 | $3,894.22 | $12,994.22 |
| 2012 | $13,684.00 | $10,263.00 | $9,239.21 | $33,186.21 |
| 2013 | $7,322.00 | $5,491.50 | $4,418.90 | $17,232.40 |
| 2014 | $8,960.00 | $6,720.00 | $4,784.24 | $20,464.24 |
| 2015 | $10,500.00 | $7,875.00 | $4,886.89 | $23,261.89 |
| 2016 | $12,320.00 | $9,240.00 | $4,665.85 | $26,225.85 |
| 2017 | $447,673.00 | $335,754.75 | $132,781.11 | $916,208.86 |
| **Total** | $505,659.00 | $379,244.25 | $164,670.42 | **$1,049,573.67** |

Defendant agrees that restitution is due and payable immediately after the judgment is en-tered and is subject to immediate enforcement, in full, by the United States.  If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a

schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

ii.     The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to challenge the amount of this restitution-based assessment.  *See* 26 U.S.C. § 6201(a)(4)(C).  Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.  Interest on the restitution-based assessment will accrue under 26 U.S.C. §§ 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

iii.    If full payment cannot be made immediately, Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office.  Defendant also agrees to provide the above-described information to the probation office.

iv.    Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered.  Defendant is not entitled to credit with the IRS for any payment until the payment is received by the IRS.  Defendant understands and agrees that this plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability.  Defendant authorizes release of

information to the IRS for purposes of making the civil tax and restitution-based assessments.

> v.  Defendant agrees to send restitution payments to the IRS at the following address:

> IRS-RACS
> Attn:  Mail Stop 6261, Restitution
> 333 W. Pershing Avenue
> Kansas City, MO 64108

> With each payment to the IRS, Defendant will provide the following information:

> a.  Defendant's name and Social Security number;
> b.  The District Court and the docket number assigned to the case;
> c.  Tax year(s) for which restitution has been ordered;
> d.  A statement that the payment is being submitted pursuant to the District Court's restitution order.

Defendant agrees to send to the Clerk of the District Court and to the U.S. Attorney's Office Financial Litigation Unit notice of payments sent directly to the IRS.  A failure to send payments to the IRS at the specific address set forth above, or a failure to include all of the information listed above, may result in a delay in the application of the payment or result in the IRS applying the payment in the best interest of the United States, including application to taxes or periods other than those identified above in paragraph B(ii).

**C.   FINE**.

> i.  In the event Defendant pays all income taxes, penalties (which shall include a 75% fraud penalty), and interest due  and owing before the time of sentencing, the United States will not recommend any fine and will forego the costs of prosecution.

> ii.  Any payment schedule for a fine imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any fine.  Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time.

iii.     The parties agree that notwithstanding any Court imposed schedule for payment of a fine, the total amount of the fine shall be due immediately and shall be deemed to be payable forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation.  Any payment schedule does not foreclose the United States from exercising all legal actions, remedies, and process available to collect the fine, including but not limited to remedies pursuant to 18 U.S.C. §§ 3613 and 3664(m)(1)(A).  Defendant will make a good faith effort to pay the fine.  Defendant agrees to entry of the fine into the Treasury Offset Program ("TOP") and waives all notices of TOP and offsets, and waives all rights to contest the TOP offsets.

iv.     Any fine shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order referencing the criminal case number and made payable to the "Clerk, United States District Court."

v.     The parties will jointly recommend that Defendant pay a special assessment in the amount of $100 to be paid forthwith at time of sentencing.  Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

**D.     <u>ADDITIONAL TERMS</u>**

i.     Defendant agrees to waive all constitutional and statutory challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out and any restitution and fine ordered pursuant to this agreement, including any claim that the forfeiture, restitution, or fine constitutes an excessive fine or punishment under the United States Constitution.

ii.     The United States may run credit and other financial reports on Defendant using public and non-public databases and share such information with the Court and the U.S. Probation Office. Defendant also authorizes the Internal Revenue Service to transmit to the United States Attorney's Office copies of Defendant's income tax returns from 2010

Def. Initials  EA

____CR____

until the fine and restitution is paid in full and forfeiture proceedings are completed, and Defendant will promptly execute any documents necessary to carry out this authorization.

iii**.** Not later than 30 days after execution of the plea agreement, Defendant shall complete and provide to the United States, under penalty of perjury, a financial disclosure form listing all Defendant's current and projected assets and financial interests valued at more than $1,000. These include all assets and financial interests in which Defendant has an interest (or had an interest prior to October 18, 2018), direct or indirect, whether held in Defendant's name or in the name of another, in any property, real or personal, including marital and community property. Defendant shall also identify all assets valued at more than $5,000 which have been transferred to any third party since October 18, 2018, , including the location of the assets, the identity of the third party or parties, and the amount of consideration received by the Defendant for the transferred assets.

iv.    From the date this financial addendum is executed until any fine or restitution are paid in full and forfeiture proceedings are completed, Defendant shall notify the Asset Recovery Section of the United States Attorney's Office of (i) any interest in property worth more than $1,000 that Defendant obtains, directly or indirectly, and (ii) any interest in property owned directly or indirectly by Defendant worth over $1,000 that Defendant intends to transfer.  This obligation covers <u>any</u> interest in property obtained under any other name or entity, including a trust, partnership or corporation. The parties will jointly recommend that this requirement also be imposed as a condition of supervised release.

v.    Defendant understands that the fine and/or restitution are delinquent until paid in full. Until the fine and/or restitution are paid in full, Defendant shall immediately notify the Asset Recovery Section, United States Attorney's Office, of any material change in Defendant's financial condition.

vi.    Defendant consents to the immediate recording of judgment liens as the United States deems appropriate as to all financial penalties imposed by the Court.

****

1    Defendant understands that the main plea agreement and this financial addendum

2  embody the entire plea agreement between the parties and supersedes any other agreement,

3  written or oral.

4

5  April 1, 2022
    Date                                  ELLIOT ADLER

6                                       Defendant

7  4-7-22
    Date

8                                       PAT HALL
                                       Defense Counsel

9

10  4/4/2022
    Date

11                                     JOHN ELLIS
                                     Defense Counsel

12

13                                     RANDY S. GROSSMAN
                                     United States Attorney

14

15  4/6/2022
    Date

16                                     VALERIE H. CHU
                                     Assistant U.S. Attorney

17

18  4/6/2022
    Date

19                                     MICHELLE WASSERMAN
                                     Assistant U.S. Attorney

20

21

22

23

24

25

26

27

28

Def. Initials EA
_____CR_____

# DOCKET

# U.S. District Court
## Southern District of California (San Diego)
### CRIMINAL DOCKET FOR CASE #: 3:22-cr-00821-BAS All Defendants

Case title: USA v. Adler

Date Filed: 04/14/2022

Assigned to: Judge Cynthia Bashant

**Defendant (1)**

**Elliot Adler**

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:371 - Conspiracy to Defaud the United States and File False Tax Returns (1) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Plaintiff**

| **USA** | represented by | **U S Attorney CR** |
| --- | --- | --- |
| | | U S Attorneys Office Southern District of California |
| | | Criminal Division |
| | | 880 Front Street |
| | | Room 6293 |
| | | San Diego, CA 92101 |
| | | (619)557-5610 |
| | | Fax: (619)557-5917 |
| | | Email: Efile.dkt.gc2@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: Assistant United States Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2022 | 1 | INFORMATION as to Elliot Adler (1) count(s) 1. (jrm) Modified on 4/14/2022 (jrm). (Entered: 04/14/2022) |
| 04/13/2022 | 2 | ABSTRACT OF ORDER Releasing Elliot Adler. (ddf) (Entered: 04/14/2022) |
| 04/13/2022 | 3 | NOTICE OF RELATED CASE(S) by USA of case(s) 3:20-cr-1916-BAS. (jrm) (Entered: 04/14/2022) |
| 04/13/2022 | 4 | CONSENT TO RULE 11 PLEA before Magistrate Judge Daniel E. Butcher by Elliot Adler. (jrm) (Entered: 04/14/2022) |
| 04/13/2022 | 5 | PLEA AGREEMENT as to Elliot Adler (Attachments: # 1 Financial Addendum)(jrm) (Entered: 04/14/2022) |
| 04/13/2022 | 6 | ORDER Setting Conditions of Release. Bond set for Elliot Adler (1) P/S $10,000. Signed by Magistrate Judge Daniel E. Butcher on 4/13/2022. (ddf) (Entered: 04/14/2022) |
| 04/15/2022 | 7 | ORDER OF TRANSFER PURSUANT TO CRIMINAL LOCAL RULE 57.2. Case reassigned to Judge Cynthia Bashant for all further proceedings. The new case number is 22-cr-00821-BAS.. Signed by Judge Janis L. Sammartino on 4/15/22. Signed by Judge Cynthia Bashant on 4/14/22. (jmo) (Entered: 04/15/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/18/2022 08:25:28 | | |
| **PACER Login:** | je228083 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cr-00821-BAS |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

# EXHIBIT AAA

**FILED**

**7/22/2022**

**STATE BAR COURT OF CALIFORNIA**   **STATE BAR COURT**

**REVIEW DEPARTMENT**   **CLERK'S OFFICE**

**En Banc**   **LOS ANGELES**

|  |  |  |
|---|---|---|
| In the Matter of | ) | SBC-22-C-30643 |
|  | ) |  |
| ENRIQUE ELLIOT ADLER, | ) | ORDER |
|  | ) |  |
| State Bar No. 229030. | ) |  |
|  | ) |  |

Since respondent, Enrique Elliot Adler, State Bar Number 229030, has been convicted of violating title 18 United States Code section 371 (conspiracy to defraud the United States and file false tax returns), a felony involving moral turpitude, it is ordered pursuant to Business and Professions Code section 6102 that respondent be suspended from the practice of law effective August 15, 2022, pending final disposition of this proceeding.  (Cal. Rules of Court, rule 9.10(a); Rules Proc. of State Bar, rule 5.342(A); see Rules Proc. of State Bar, rule 5.162(D) [any motion by respondent to delay or temporarily stay interim suspension order should include specified information listed in rule as part of attorney's showing of good cause].)  It is further ordered that respondent comply with California Rules of Court, rule 9.20, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this suspension.

Within 180 days of the date of this order, the Office of Chief Trial Counsel of the State Bar is ordered to submit evidence of finality or provide an update on finality.

W. Ken McGill

Acting Presiding Judge

## CERTIFICATE OF ELECTRONIC SERVICE

(Rules Proc. of State Bar, rule 5.27.1.)

I, the undersigned, certify that I am a Court Specialist of the State Bar Court.  I am over the age of eighteen and not a party to the within proceeding.  Pursuant to standard court practice, on July 22, 2022, I transmitted a true copy of the following document(s):

ORDER FILED JULY 22, 2022

by electronic service to Enrique Elliot Adler at the following electronic service address as defined in rule 5.4(29) and as provided in rule 5.26.1 of the Rules of Procedure of the State Bar:

elliotadler@gmail.com

by electronic service to Joseph A. Silvoso III at the following electronic service address as defined in rule 5.4(29) and as provided in rule 5.26.1 of the Rules of Procedure of the State Bar:

Joseph.Silvoso@calbar.ca.gov

The above document(s) was/were served electronically.  My electronic service address is ctroomA@statebarcourt.ca.gov  and my business address is 845 South Figueroa Street, Los Angeles, CA 90017.

I declare, under penalty of perjury under the laws of the State of California, that the information above is true and correct.

Date: July 22, 2022

Julieta Gonzalez
Court Specialist
State Bar Court